PETER WILLARD AND WILLIAM S. HERSPERGER, EXC'RS OF
ABRAHAM WILLARD vs. HANSON RAMSBURG ET AL.

PRIORITY OF LIEN BETWEEN MORTGAGEES: MORTGAGOR A COMPETENT WITNESS.
In a contest between a prior and subsequent mortgagee, after a sale under
a decree for foreclosure, reserving the relative rights of the contestants, the
mortgagor must be regarded as holding an impartial relation both to the
parties and fund in controversy, and without any interest which would
render him an incompetent witness as to circumstances affecting the deter-
mination of those rights.

——: NOTICE: BONA FIDES.—The proper construction of the Act of 1856, ch.
154, (incorporated into the Code, Art. 24, sec. 16,) is, that between a
prior and subsequent mortgagee, a priority of lien may be secured to the
latter only when the subsequent mortgage is recorded without notice, and
has been obtained *bona fide.*

It has been uniformly announced as a governing principle, in this State, that
a subsequent mortgage will not be postponed, unless the notice of a prior
mortgage is so clearly proved, as to make it *fraudulent* in the junior mort-
gagee to procure and register his mortgage in prejudice to the known title
of the party holding the first mortgage.

Where a junior mortgagee, having not only positive notice of the existence of
the senior mortgage, but having assented to its prior execution, afterwards,
by his conduct, manifests anxiety to have his own mortgage first recorded,
and then by a proceeding in Equity, seeks to procure its preference over the
senior mortgage, such conduct is evidence of *mala fides*, and thoroughly
gratifies the rule above stated.

LACHES.—Where a prior mortgage is recorded within four days of the time of
its execution, there is no ground of appeal to the conscience of a Court of
Equity by a junior mortgagee, under the circumstances above stated, on
the ground of delay.

APPEAL from the Equity side of the Circuit Court for
Frederick County:

The appellants, who were the executors of Abraham
Willard, deceased, filed the bill in this case, for the fore-
closure of a mortgage executed to their testator by Peter
Young, on the 24th of August 1858. The appellees,
mortgagees, under a prior mortgage of the same grantor,
recorded on the same day with that to the said deceased,
but some hours later, were also made defendants. The
mortgaged premises were sold by a trustee, under a decree

of foreclosure, which, by agreement of the parties, reserved the question of priority of lien as between them. The sale was finally ratified, and accounts Nos. 1 and 2 stated by the auditor under instructions of the complainants and defendants respectively. Account No. 2, preferring the mortage of the appellees, and applying the proceeds of sale accordingly, was ratified by a *pro forma* decree of the Court below (NELSON, J.,) from which this appeal was taken. The facts of the case are more fully disclosed in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Jos. M. Palmer,* for the appellants.

The real question involved depends entirely upon the true construction of the Act of this State, of 1856, ch. 154, sections 1 and 114. The registration Acts both in England and the several States of this Republic, are very conflicting and variant in their wording and provisions, and have caused much litigation and conflict of judicial interpretation by the Courts, in seeking to ascertain the true meaning and intention of the law-makers. It is a principle well settled, both in this country and England, that in the construction of statutes the words used, if of common use, are to be taken in their natural and ordinary signification and import. 1 *Kent Com.*, 462. *Dwarris on Statutes*, 703, 9 *Law Lib'y*, 48. *Martin vs. Hunter's Lessee*, 1 *Wheat.*, 326. *Pr. Lord Tenterdon*, 7 *Barn. & Cress.*, 567. *King vs. Inhabitants of Ramsgate*, 6 *Barn. & Cress.*, 712. *Rickards vs. Murdock*, 10 *Barn. & Cress.*, 527. *McMechan vs. Griffing*, 3 *Pick.*, 149. *Hewes vs. Wisswill*, 8 *Greenlf. Rep.*, 94. *Jackson vs. Fish*, 10 *Johns.*, 457. *Osborne vs. Benson*, 5 *Mason*, 159.

The Court of Appeals in the case of *Clabaugh & Sanders vs. Birely*, 7 *Gill*, 361, in giving an exposition of the

Act of 1825, ch. 203, sec. 1, have, to a great extent, settled the main·questions involved in this case, and is the only case I have been able to find, in which there has been an equitable interpretation given to the 1st sec. of the Act of 1825, ch. 203; and I find no case in which the Act of 1856, ch. 154, secs. 1 and 114, have been before this Court for adjudication, hence the Act must be construed literally, as directed by the first section. The statute of Ohio of the 25th February 1831, providing for recording deeds, sec. 7, is substantially in terms like the 114th section of the Act of 1856. In the Circuit Court of the United States, Judge McLean decided that under the Act of Ohio, of 1831, a mortgage takes effect only from the time it is left for record. The statute makes the recording a part of the execution. The mortgage first recorded will create a paramount lien to one of prior date, though an equitable one, which has not been recorded. *Doe vs. Bank of Cleaveland,* 3 *McLean's Rep.,* 140; the Supreme Court of Ohio has repeatedly decided the question in the same way. "In Ohio a mortgage has no effect either in Law or Equity, previous to its delivery for record." *Holliday vs. Franklin Bank,* 16 *Ohio R.,* 533. That a prior unrecorded mortgage is postponed to a latter recorded mortgage, although the second mortgagee had notice of the prior mortgage. *Stansell vs. Roberts,* 13 *Ohio Rep.,* 148. *Mayham vs. Coombs,* 14 *Ohio Rep.,* 428. See also *Follett vs. Hall,* 16 *Ohio Rep.,* 111. *Fosdick vs. Barr,* 3 *Ohio Rep., N. S.,* 471. The reasoning of McLean, Judge, in the case of *Doe vs. Bank of Cleaveland,* is conclusive and irresistible, and settles the question involved in this case.

The statute of Pennsylvania of the 28th March 1820, regulating the recording of mortgages, &c., (*Purdon's Dig.,* 231,) is in its provisions substantially like the 114th section of the Act of 1856, ch. 154. The Supreme Court of Pennsylvania gave a like construction to said act in

the case of *Hulings vs. Guthrie, 4 Burr's Rep.*, 125. In the case under consideration the appellees have lost their lien by negligence. The appellant's testator had a perfect right to take his mortgage when he did. Under the Act of 1829, of North Carolina, declaring that a mortgage shall be effectual as against creditors, but from the registration, notice of a prior unregistered mortgage, does not affect a creditor taking a subsequent mortgage for the security of his debt, which is first recorded. *Flemming vs. Burgin, 2 Ired. Eq. Rep.*, 584. *Davidson vs. Cowan, 1 Devereaux's Eq. Rep.*, 304. This is a principle running through all the cases. *Cushing vs. Hurd, 4 Pickering's Rep.*, 253. *Warden vs. Adams, 15 Mass. R.*, 233. *Clabaugh vs. Birely, 7 Gill R.*, 361.

2nd. The second question is one of fact; which of the two mortgages in question was, in point of fact, first filed in the clerk's office for record? The evidence is conclusive and settles the question, no exceptions having been filed in the Court below to its admissibility. The appellant's mortgage was filed early in the morning of that day, and the appellee's some hours afterwards.

Liens upon land in this State are created and take effect from the time of filing the mortgage for record, and the very moment the mortgage is recorded the lien becomes fixed, and the preference created, which cannot be defeated by any fiction of law. This doctrine is too thoroughly settled to need comment, and I will content myself by referring to the authorities. *Johnson vs. Smith, 2 Burr R.*, 950. *Ex-parte D'Obree, 8 Ves. Rep.*, 82. *Lemon vs. The Heirs of Jacob Staat, 1 Cow. R.*, 592. *Sadler vs. Leigh et al., 4 Camp. R.*, 195. *Thomas vs. Desanges, 2 B. & Ald. R.*, 586. *3 Chitty's Practice*, 111. *Combe vs. Pitts, 3 Burr R.*, 1423, 1434. In the matter of *Richardson, 2 Story R.*, 571. *Bellasis vs. Hester, 1 Ld. Raymond Rep.*, 281. The principle decided in the

case of *Callahan vs. Hallowell*, 2 *Bay's S. C. R.*, 8, 9, is very much like the one under consideration.

3rd. The appellees' counsel place great stress upon the question of notice of the existence of their mortgage, when Willard took his mortgage. The question of notice was fully considered in the first point. The Act of 1856, ch. 154, sec. 114, was passed to obviate and simplify the very difficulties presented in this case. This doctrine of postponing registered or unregistered conveyances on the ground of notice, has been rejected by Courts, and it is subject to the qualification that it shall prevail only in cases, where the notice is so clearly proved as to make it fraudulent in the purchaser, &c. *Wyatt vs. Barwell*, 19 *Vez. R.*, 439. *U. S. Ins. Co. vs. Shriver*, 3 *Md. Ch. Dec.*, 385. *Gill vs. McAtee*, 2 *Md. Ch Dec.*, 255. *Brinkerhoff vs. Lansing*, 4 *John. Ch. R.*, 70. *Dey vs. Dunham*, 2 *John. Ch. R.*, 182. *Hine vs. Dodd*, 2 *Atk. R.*, 275. *Berry vs. Mutual Ins. Co.*, 2 *John. Ch. R.*, 608. *Clabaugh vs. Birely*, 7 *Gill R.*, 363. *Kent's Com.*, page 171 (note *c*,) and cases cited. It will not be contended by the learned counsel on the other side, that notice of the unrecorded mortgage of the appellees was, under the facts and circumstances of this case, *per se*, a fraud. *Wesley vs. Thomas*, 6 *H. & J.*, 25. *Hertle vs. McDonald*, 2 *Md. Ch. Dec.*, 131 and 3 *Md. Rep.*, 377. *Stearns vs. Page*, 7 *Howard R.*, 829.

4th. The appellees place great reliance upon the pretended parol agreement entered into between Willard and Young, the mortgagor, indeed it is the only cause of defence charged in their answer.

The pretended agreement is inadmissible in evidence for several incontestible reasons:

1st. It is void under the statute of frauds.

2nd. It is without consideration, and not obligatory upon either Willard or Young, the only parties to it, and

neither can enforce its execution either in a Court of Law or Equity.

3rd. It has no sort of relevancy or application to the questions involved in this case.

4th. The mortgagees in the mortgage of the 21st of August 1858, are no parties to it; and they had no participation in making it, and it would seem perfectly clear that they have no legal or equitable right to invoke its aid as evidence to defeat the right of priority of the appellants in the distribution of the money in question.

The competency of Young was excepted to in the Circuit Court, and the question now is, was he a competent witness for any purpose. I contend that he was not. He was a party defendant and liable for costs, and in this Court he is one of the appellees. He is liable for costs in both Courts. *De Wolf vs. Johnson*, 10 *Wheaton*, 367. A case in Equity very much like this. *Smyth vs. Strader*, 4 *Howard's R.*, 417. *Scott vs. Lloyd,* 12 *Peters' R.*, 149. *Stein vs. Bowman*, 13 *Peters*, 219. In Massachusetts and New York, the question has been decided in the same way—2d vol. *Philips' Ev.*, by *Cowen & Hill*, note 122. *Commonwealth vs. Marsh*, 10 *Pick.*, 58. *Schermerhorn vs. Schermerhorn*, 1 *Wend.*, 119. *Miller vs. Starks*, 13 *Johns.*, 517. The decisions in the other States are conflicting. The true principle to be extracted from the cases in this State is, that as a general rule, parties plaintiffs or defendants to the record, are incompetent, and the party offering the evidence must clearly show affirmatively, that the witness has no interest either as to costs or otherwise. *Lizardi vs. Cohen*, 3 *Gill*, 430, 435. *Selbey vs. Clayton*, 7 *Gill*, 243. *Foley & Woodside vs. Mason et al.*, 6 *Md. Rep.*, 47. The case of *Worrall vs. Jones*, 7 *Bing. R.*, 395, strongly fortifies the principle contended for in this case. The question of competency equally applies to cases in a Court of Equity as at law. The principle is the same in both Courts, although the

mode of proceeding is different.    In Equity, a party to the case cannot be examined as a witness without a previous order of the Court, passed upon petition, verified by affidavit, that the party proposed to be examined has no interest in the case.    1 *Smith's Ch. Practice*, 344.    *Murray vs. Shadwell*, 2 *Vez. & Beam*, 401.    *Dixon vs. Parker*, 2 *Ves. R.*, 219.    *Barret vs. Gore*, 3 *Atk. R.*, 401.    *Gresley Equity Ev.* 338, 339.    *Eckford vs. Dekay*, 6 *Paige,* 565. *Hill vs. Hall*, 9 *Gill & John.*, 81.   10 *Wheaton*, 367, *supra.* "If a defendant by possibility may be liable for costs, his evidence cannot be received."    *Barret vs. Gore*, 3 *Atk. R.*, 402.    There is one remaining question touching the competency of the witness, as yet not noticed.    He is the mortgagor, and as a matter of course entitled to the equity of redemption, and was necessarily made a party; and he is entitled to the surplus of the purchase money, after the payment of debts, if there be any.

5th. The decree of the Circuit Court in ratifying the report of the auditor, No. 2, is manifestly erroneous and must be reversed; for there is not a particle of legal and competent evidence in the case, to prove the validity of the claims Nos. 4, 5, 6, 7, 8, 9, 10, 11, as allowed by the auditor in his report No. 2.    It is an unbending rule both at Law and Equity, that all debts and claims, &c., before they will be allowed by the Court, must be proved by legal and competent evidence.

*Wm. M. Merrick*, for the appellees.

The exceptions on both sides to the auditor's reports, embrace all the questions to be urged on this appeal. Were there no specific exceptions, the case would be open here, as the auditor reported under instructions from both sides, and made no report upon his own judgment.    See *Dennis vs. Exc'rs of Dennis*, 15 *Md. Rep.* 150.

The following propositions are maintained on the part of the appellees:

1st. Peter Young, the mortgagor, was a competent witness to prove actual notice to, and *mala fides* in, the appellant's testator, touching the priority of appellees' mortgage. He was a balanced witness, his costs being neither increased or diminished by the adjustment of their priorities. *Greenleaf's Ev.*, *sec.* 420. *U. S. Ins. Co. vs. Shriver et al.*, 3 *Md. Ch. Dec.*, 386. *General Ins. Co. vs. U. S. Ins. Co.*, 10 *Md. Rep.*, 525.

2nd. The notice in fact that the prior mortgage was executed, was notice of every thing contained in said prior mortgage, and as well that Ramsburg & Torns were embraced as the other mortgagees whose names were specified. *Bryan's Lessee vs. Harvey*, 18 *Md. Rep.*, 128. *Mayor & C. C. of Balto. vs. White*, 2 *Gill*, 444. *Price & Bevans vs. McDonald*, 1 *Md. Rep.*, 419. *Ringold vs. Bryan*, 3 *Md. Ch. Dec.*, 488. *Stockett vs. Taylor, Ibid.*, 537.

3rd. The appellants' testator had notice in fact of the appellees' prior mortgage; and therefore the priority of his record was *mala fide* as against appllees, and the Court below properly decreed the proceeds of mortgage sales to the appellees. Sec. 114, of 1856, was not designed to introduce a new rule as to notice and *bona fides*. It is to be read in connection with sec. 100. The latter fixed priority as to deeds to date of acknowledgment, the former fixed priority of mortgages to date of recording. Both leave the question of effect of notice as it before stood. Acts of Assembly 1825, ch. 203; 1831, ch. 304; Act of 1856, ch. 154, secs. 113, 114. The Code, Art. 24, sec. 16. *U. S. Ins. Co. vs. Shriver*, 3 *Md. Ch. Dec.*, 385. *Price vs. McDonald*, 1 *Md. Rep.*, 403. *Winchester vs. Balt. & Susq. R. R.*, 4 *Md. Rep.*, 231. *General Ins. Co. vs. U. S. Ins. Co.*, 10 *Md. Rep.*, 525, 527. *Bryant's Lessee vs. Harvey*, 18 *Md. Rep.*, 127. *Johns vs. Scott et al.*, 5 *Md. Rep.*, 81.

4th. That the affidavit of Daniel Keefauver, one of the mortgagees, that the consideration set forth in the mortgage, is true and *bona fide,* as therein set forth, is sufficient within the Acts of Assembly to embrace the interests of all the mortgagees. His privity in interest with all the other mortgagees in the fund mortgaged to them jointly, placed him so far, in privity to all the debts secured by the mortgage. He was competent, within the letter and policy of the law, to make an affidavit in the premises, which enured to the benefit of his co-mortgagees, as to their claims as well as to his own. The very antagonism of his interest to theirs in a case of deficiency of the fund to pay all the claims for which it was by the mortgage jointly pledged, gave him a direct legal interest in the mortgage as to them, which entitled him to make the affidavit.

The prevention of fraud, the object of the law, is more effectual in such case than if he were interested to have all the debts paid to himself. See Acts of 1846, ch. 271, Code, Art. 24. secs. 29, 30. 1856, ch. 113, and ch. 154, secs. 128, 142. *Denton & Wife vs. Griffith,* 17 *Md. Rep.,* 304. *Cockey vs. Milne,* 16 *Md. Rep.,* 200, 207. *Foulke vs. Fleming & Douglass,* 13 *Md. Rep.,* 413.

5th. The Acts of 1846, ch. 271, and 1856, ch. 113, are to be construed strictly, being in derogation of the common law rights of mortgagees. They are not to be stretched beyond the mischief contemplated, where such construction would injure third persons. *Gibbon vs. Hooper,* 2 *Barn. & Adol.,* 734.

6th. But even if the mortgage be held invalid as to the other creditors, still it is good as to the claims Nos. 7 and 10 of auditor's second report, in the first of which the affiant and Henry Keefauver were joint sureties of the mortgagor on a note of $700, with interest from September 12th 1858, and in the second he is also joint surety with his co-mortgagee Jacob Keefauver, on a note of $1410,

with interest from 12th of August 1858, which two debts' nearly absorb the whole fund.  For if the affiant's interest be not sufficient in the whole subject-matter (as above urged) to protect the claims of all the mortgagees, it must be because the instrument is divisible in its nature, in which case it follows, that the good and perfect are not to be vitiated by the bad and imperfect with which they are associated, but not united inseparably. *Bayne vs. Suit,* 1 *Md. Rep.,* 85. *Stockett vs. Holliday,* 9 *Md. Rep.,* 481. *Greenwood vs. Bishop of London,* 5 *Taunton,* 727. *Thompson vs. Pitcher,* 6 *Taunton,* 359. 1*st Wms. Saunders,* 65, *a note* 1. *Chitty on Contracts,* 7*th Am. from* 3*rd London Ed., p.* 694. *Kerrison vs. Cole,* 8 *East.,* 231. *Ferguson vs. Norman,* 5 *Bing. N. C.,* 76. *Armstrong vs. Toler,* 11 *Wheaton,* 268. 43 *Amer. Jurist,* 22, 23.

An independent illegal clause does not vitiate. *Jervis vs. Peck,* 1 *Hoff.,* 479. *Bryson vs. Whitehead,* 1 *Sim. & Stu.,* 74. *McAllen vs. Curchill,* 11 *Moore,* 483. *Hinman vs. Woodruff,* 11 *Vermont,* 592. *Hinesburgh vs. Sumner,* 9 *Ver.,* 23. *Donallen vs. Lennox,* 6 *Dana,* 91. *Turner vs. Bissell,* 14 *Pickering,* 194.

The rule of the civil and admiralty law is still more liberal, which allows a bond or contract to stand good for so much of an entire consideration as on proof may appear good. *The Virgin,* 8 *Peters,* 550. *The Augusta,* 1 *Dodson,* 283. *The Tartar,* 1 *Hag. Rep.,* 1. *The Nelson,* 1 *Hag. Rep.,* 169, 176.

GOLDSBOROUGH, J., delivered the opinion of this Court.

Peter Young, one of the appellees, executed a mortgage to Abraham Willard, the appellants' testator, on the 24th day of August 1858, to secure the payment of the respective sums therein stated.  The appellants after the death of the mortgagee, filed their bill of complaint in the Circuit Court for Frederick County, on the 14th day

of October 1859, to obtain a decree for the sale of the mortgaged premises.

The appellees to whom Young had also given a mortgage on the same property on the 21st day of August 1858, were made defendants to the above suit, and by their answer assented to a decree and sale of the mortgaged property, and to have all questions of the priority of right settled before the auditor in the distribution of the fund arising from the sale.

The evidence shows that Willard's mortgage was received to be recorded, on the 25th day of August 1858, at *half past nine o'clock in the morning*, and that the appellees' mortgage was received for record *some time after on the same day*. The property was sold by the trustee appointed by the Court, the sale reported and finally ratified.

The cause being sent to the auditor, he stated two accounts: No. 1, under the instruction of the complainants' solicitor, allowing the complainants' claim, and appropriating the balance of the proceeds of sale, after deducting expenses of suit to the satisfaction thereof; and No. 2, under the instruction of the defendants' solicitor, allowing the claims set forth, excluding the complainants. The appellants filed exceptions to the auditor's report No. 2, the Circuit Court overruled these exceptions, and by a *pro forma* decree passed by agreement, finally ratified the auditor's report No. 2. From this decree the complainants prosecuted this appeal.

The exception taken to the testimony of Peter Young involved his competency to testify, he being a party defendant, and alleged to be liable for costs, and interested in the suit. This exception was overruled by the Circuit Court, and we think correctly. When the exception was taken, the case was before the auditor. Young's equity of redemption had been foreclosed by the decree, a sale of the property had been made, and the fund arising

from the sale was about to be distributed to the mortgagees entitled thereto. In this attitude of the case, where the contest was between the prior and subsequent mortgagees, Young must be regarded as holding a perfectly impartial relation both to the parties, and the fund in controversy, and without any interest which would render him incompetent.

We are next to consider the important question, whether the mortgage of Willard being first recorded, such registration gave to the mortgagee a priority of lien, to the exclusion of the rights of the appellees under their mortgage. This involves the further question, whether by the true construction of the Act of 1856, ch. 154, a priority of registration will exclude all consideration of the attendant circumstances connected with the execution of conflicting mortgages, such as notice, &c. Though the terms of the 114th section are very comprehensive, they do not substantially vary from the pre-existing law, and we do not feel justified in so construing the Act as to allow a mortgagee to take advantage of his own wrong, and to be guilty of *mala fides* in the obtention and registration of his junior mortgage. To give such an interpretation to the Act would be to disregard an unbroken current of decisions in this State since the Act of 1825, ch. 203. *Clabaugh et al. vs. Byerly,* 7 *Gill,* 361. *U. S. Ins. Co. vs. Shriver et al.* 3 *Md. Ch. Dec.,* 381. *Gen. Ins. Co. vs. U. S. Ins. Co.,* 10 *Md. Rep.,* 517. In conformity with these decisions, we think the proper construction of the Act of 1856 is that priority of lien may be secured only where a subsequent mortgage is recorded without notice, and such mortgage has been obtained *bona fide.* This view of the Act is sustained by the incorporation of the Act of 1856 into the Code, Art. 24, sec. 16; where it is expressly enacted that the preference in favor of the junior mortgage can arise only upon the ground that it was obtained *bona fide,* and upon good and valuable consid-

28    v. 22.

eration. But while the decisions in this State have settled the question as to the relative rights of prior and subsequent mortgagees, it is uniformly announced as a governing principle, that a subsequent mortgage, if first recorded, will not be postponed unless the notice of a prior mortgage is so clearly proved, as to make it *fraudulent* in the junior mortgagee to take and register his mortgage, in prejudice to the known title of the party holding the first mortgage.

Testing the case before us by the above rule, and having decided that the testimony of Young was admissible, we entertain no doubt from his evidence and the evidence of John Ifert, that Willard, the appellants' testator, had not only positive notice of the appellees' prior mortgage, but that he assented to its prior execution. The conduct of Willard, manifested by his anxiety to have his mortgage first recorded, tends further to prove his *mala fides*. Indeed we can hardly conceive of a case in which the requisitions of the above rule could be more thoroughly gratified.

It may be further said in reference to the character of this case, that no appeal can be consistently made by the appellants to the conscience of this Court, as a Court of Equity, on account of the delay on the part of the appellees in having their mortgage recorded, as it was recorded within four days after its execution.

The decree of the Circuit Court will be affirmed with costs to the appellants.

*Decree affirmed.*