EDWARD HIGGINS, trading as HIGGINS, COBB & CO.
vs. BARRINGTON LODGE, ANDREW WILKINS and
GEORGE T. STONEMAN, copartners, trading as LODGE,
WILKINS & CO.

*Fraudulent purchase—Sale of Goods by Auctioneer in Good
faith—Failure to Inquire as to nature of Transaction where
circumstances Suggest the Propriety of doing so.*

Where goods purchased through fraud, are placed in the hands of an
auctioneer for sale, and he, in good faith, advances money upon
them, or incurs expenses in relation thereto, he acquires a title to
the goods that cannot be impeached by the original vendor thereof.
But it is otherwise, if at the time the goods were delivered to the
auctioneer he had knowledge of circumstances calculated to put a
man of ordinary prudence on inquiry as to whether the party who
delivered the goods to him was perpetrating a fraud in selling the
same by auction, and he failed to make the inquiry.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered three prayers, the
third of which was as follows:

3. That the plaintiffs are not precluded from recovering
in this action by reason of any advances made to Hirsch
Levy, or expenses incurred by the defendant upon the
goods replevied, if the jury shall find that at the time said
goods were delivered to him, the defendant had knowledge
of circumstances calculated to put a man of ordinary
prudence and caution upon inquiry as to whether said
Levy was not perpetrating a fraud in selling off his stock
at auction at that time, and the defendant failed to make

inquiry into the character of the transaction in which said Levy was so engaged.

The defendant offered the two following prayers:

1. That if the jury find that the defendant was, at the time of the transactions mentioned in the evidence, an auctioneer in the City of Baltimore, and that in the ordinary course of the business of the defendant, he did in good faith make advances to Hirsch Levy upon the security of goods consigned to him by said Levy for sale, and that among the goods so consigned, and upon the security of which the advances were made, were the goods replevied in this case, and that no advance was made upon the security of any part of the goods consigned, including the goods replevied, but that the advances were made upon the security of the whole amount of goods so consigned, and if they further find that said advances were made by the defendant without notice or knowledge of the circumstances under which said Levy had purchased said goods, then their verdict must be for the defendant.

2. That if the jury find that the defendant made advances on the goods consigned to him by Levy for sale, as set forth in the defendant's first prayer, the plaintiffs are not entitled to recover even if the jury find that the defendant had knowledge of circumstances calculated to put a man of ordinary prudence and caution upon enquiry as to whether said Levy was not perpetrating a fraud in selling off his goods at the time the same were sold.

The Court (PHELPS, J.,) refused the plaintiffs' first and second prayers, and granted their third prayer, and refused the defendant's second prayer and granted his first prayer, and gave also the following instruction:

If you find that Hirsch Levy bought on credit from the plaintiffs the goods replevied in this case, but at the time of doing so had no reasonable expectation of paying for them and no intention to do so, and that he afterwards sent goods to the warehouse of the defendant to be sold at

auction for the account of said Levy, and that before said goods had been so sold, the defendant was notified by the plaintiff, Lodge, or his attorney, of the fraudulent manner in which said goods had been obtained from plaintiffs by Levy, and demand was made of him for said goods, then the plaintiffs are entitled to recover, unless you shall further find that prior to such demand the defendant had, in good faith, advanced money to said Levy upon the security of said goods, or incurred expenses in relation thereto.

The defendant excepted to the refusal of his second prayer, to the granting of the plaintiffs' third prayer, and to the instruction given by the Court. The verdict and judgment were in favor of the plaintiffs, and the defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Charles W. Field, Jr.,* for the appellant.

The appellees could have a right of possession to the goods in question, sufficient to sustain replevin on but *one possible* ground, viz., that the sale made to Levy was *rescinded.* For if that sale were *not* rescinded, it was still valid and in force ; and if it were still valid and binding, the goods were not the appellees' but Levy's ; and the appellees could not claim them. If the sale, however, was *voidable,* and had been rescinded or annulled by the vendor, then the goods were revested in the appellees as against Levy, or any-one claiming under him with notice of the facts that made the sale voidable. The question is therefore narrowed down to this : For what causes could Lodge rescind the sale to Levy ? For fraud existing in the contract of sale itself, forming a part of it ? Or for a subsequently formed fraudulent intent to make away with his property generally, to the detriment of his creditors,

no matter how fair the original purchase may have been? To this question there can be but one answer.

Fraud affecting the contract of *purchase itself*, by means of which the purchase is effected, avoids the contract as to the fraudulent vendee, and all claiming under him with notice of the facts. *Wells on Replevin, secs.* 320–5 ; *Benj. on Sales, sec.* 648, *&c.*

A fraudulent transfer confers no new rights upon creditors. They may appropriate their debtor's property to their claims, *in the way the law provides,* but not otherwise. If they seize it themselves, they act illegally. *Bump on Fraud. Conveyances,* 460–1.

Fraud must be material to the contract which is to be avoided ; for if it relate to another matter, or to this only in an indirect or trivial way, it offers no ground for the action of the Court. It must therefore relate distinctly and directly to this contract, and affect its very essence and substance. If the fraud be such that, had it not been practised, the contract would not have been made, then it is material ; but if it be shown that the same thing would have happened in the same way, if the fraud had not been practised, it cannot be deemed material. *McAleer vs. Horsey,* 35 *Md.,* 439.

The appellees' third prayer is further, entirely inconsistent with the appellant's *first.* The one makes fraud in the original sale from the appellees to Levy, a condition precedent to the appellees' recovery ; the other makes fraud in the subsequent re-sale only, sufficient, leaving the fairness of the first sale out of the question. Prayers must be consistent with each other. *Evans' Practice,* 371 ; *Harrison vs. Mayor, &c., of Baltimore,* 1 *Gill,* 264 ; *Cumberland Coal and Iron Co. vs. Tilghman,* 13 *Md.,* 74 ; *Poe's Practice, sec.* 300 ; *Adams vs. Capron,* 21 *Md.,* 187 ; *Groff vs. Hansel,* 33 *Md.,* 161.

*William Reynolds*, for the appellees.

The single question before this Court is whether or not, upon the hypothesis of the Court's instruction, the instruction given at the instance of the plaintiffs, lays down the correct rule for deciding if the defendant's advances to the fraudulent vendee were made in such good faith as to entitle him to the protection of a *bona fide* purchaser, against the claim of the defrauded vendor? Upon this point see the following cases: *Price vs. McDonald*, 1 *Md.*, 403, 415; *Miller vs. Williamson*, 5 *Md.*, 230; *Green vs. Early*, 39 *Md.*, 229; *Abrams vs. Sheehan*, 40 *Md.*, 446, 457; *Flynn vs. Walsh*, 4 *Cent. Rep.*, 158; *Biddinger vs. Wiland*, 67 *Md.*, 359; *Lowry vs. Com. & Far. Bk.*, *Taney C. C.*, 310, 330, and *Albert vs. Savings Bank*, 2 *Md.*, 168; *Whitbread vs. Jordan*, 1 *You. & Coll. Exch.*, 303; *Green vs. Humphrey*, 50 *Pa. St.*, 212; *Buckner vs. Jones*, 1 *Mo. App.*, 542; *Barnard vs. Campbell*, 58 *N. Y.*, 73; *Baker vs. Bliss*, 39 *N. Y.*, 70; *Danforth vs. Dart*, 4 *Duer*, 101, 106; *Wade on Notice, secs.* 11, 13, 23, 67; *Hyde vs. Ellery*, 18 *Md.*, 496; *Ratcliffe vs. Sangston*, 18 *Md.*, 391.

BRYAN, J., delivered the opinion of the Court.

Lodge and others replevied certain goods from Higgins. The evidence tended to show that one Hirsch Levy had made a fraudulent purchase of these goods from the plaintiffs; and that he had sent them for public sale to the defendant, who was an auctioneer. The defendant had made advances of money on them.

On the supposition that the purchase of the goods from the plaintiffs had been accomplished by the fraud of Levy, it is not questioned that it was void at the election of the sellers, and that they could have reclaimed their property from him. But if he sold them to a *bona fide* purchaser without notice of the fraud, a good title would be passed which could not be impeached by the original vendor. Ordinarily a purchaser cannot acquire a title from a ven-

dor who has none. But the authorities show without dissent that there is an exception under the circumstances which we have just supposed. In *Powel vs. Bradlee*, 9 *G. & J.*, 278, it is said : "In such a case, good faith, and a valuable consideration would be essential constituents of a good title." If these features do not appear in the transaction, we take it that the title fails. An interest in the goods acquired by making advances on them when placed in the hands of an auctioneer for sale, would be protected under the same circumstances which would make a purchase valid.

The Court instructed the jury that if Levy's purchase was fraudulent, the defendant's title would be defeated, unless they found he had in good faith advanced money to Levy upon the security of the goods; or incurred expenses in relation to them. On the prayer of the defendant the Court ruled that the plaintiff could not recover, if the jury found that the advances were made by the defendant, without notice or knowledge of the circumstances under which Levy purchased the goods. On the prayer of the plaintiffs it was ruled that they were not precluded from recovering by these advances, if the jury found that at the time the goods were delivered to the defendant, he had knowledge of circumstances calculated to put a man of ordinary prudence on inquiry as to whether Levy was perpetrating a fraud in selling the goods by auction, and that he failed to make inquiry into the character of the transaction. Taking these instructions together it seems to us that they laid the case properly before the jury. Higgins could not deduce title to the goods through a fraudulent vendee, unless he showed that his advances were made in good faith. If he knew that Levy was selling these goods for the purpose of carrying into effect a fraud, his advances could not be considered as made in good faith ; and if the circumstances were such as reasonably to call for inquiry, and if inquiry would have

Higgins *vs.* Lodge, *et al.*

given him this knowledge, he is responsible in the same way as if he had obtained it. It has been held that if in any purchase "there be circumstances which in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would give him." *Baynard vs. Norris*, 5 *Gill*, 483. To the same effect are *Green vs. Early*, 39 *Md.*, 229; *Abrams vs. Sheehan*, 40 *Md.*, 446. The evidence showed that Levy rented a basement room about the fifteenth of June, 1885, and commenced business as a jobber; that between that time and September the seventh he purchased a large quantity of goods; six thousand dollars worth being purchased from these plaintiffs; that in the latter part of June, 1885, he commenced sending goods to the defendant to be sold by auction, the defendant making advances on them; that he continued to send goods for this purpose, and to receive advances from the defendant until September the fifth; that the amount of these auction sales was more than sixty-four hundred dollars; that on September the fifth, Levy had in his store only four or five hundred dollars worth of goods; that the week before he had fifteen thousand dollars worth; that he had opened a bank account on the eleventh of July, and on the seventh of September he drew out the balance to his credit with the exception of a small sum; that after that day he was regarded as utterly insolvent, that he purchased the goods in question from the plaintiffs on the twenty-first of August on credit, the time fixed for payment being October the tenth; that the small balance to his credit in the bank was attached by creditors, and that after September his business was conducted in his wife's name. The evidence certainly warranted the jury in finding that when Levy purchased these good he did not intend to pay for them, and that he was engaged in a deliberate scheme of fraud, which he was effect-

ing by purchasing large quantities of goods on credit, selling them by auction, and putting the proceeds beyond the reach of his creditors. Notwithstanding fraud on the part of Levy in making the purchase in question in this case, the title of Higgins would be good if the matters within his knowledge did not reasonably suggest to him the propriety of inquiring into the transactions in which Levy was engaged, and if this inquiry would not have discovered his fraudulent courses. It was the province of the jury to determine this question on the evidence in the cause.

*Judgment affirmed.*

(Decided 5th January, 1888.)