## FERTITTA *v.* BAY SHORE DEVELOPMENT CORPORATION, ET AL.

[No. 19, September Term, 1968.]

394

*Decided February 11, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, FINAN, SINGLEY and SMITH, JJ.

*Charles C. W. Atwater,* with whom were *David A. Carney* and *Mylander & Atwater* on the brief, for appellant.

*Jack C. Dunlap* and *Marcus J. Williams,* with whom were *Williams and Dunlap* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This case arises because of an apparent error of the State Roads Commission in that a road near Ocean City was built in a place other than in the location described in the deeds.

Sinepuxent Beach Company of Baltimore City laid out a tract of land north of the former corporate limits of Ocean City. A plat was recorded among the Worcester County land records in 1891. Just prior to World War II the Maryland State Roads Commission (Commission) desired to acquire a 120 foot right-of-way for a road from Ocean City to the Maryland-Delaware State line at Fenwick Island. It is conceded that it was the intent of the Commission in acquiring its right-of-way to take land on each side of Philadelphia Avenue as it was laid down on the Sinepuxent Beach plat. Reference to plat 1 attached hereto will demonstrate this point. It is a copy of a portion of the Commission's plat. The reporter is directed to copy it. (See p. 405 *infra*.)

In accordance with plat 1 the father of appellant (Fertitta), her predecessor in title, made a conveyance to the Commission on its usual deed form conveying the land "lying between the lines designated 'right-of-way lines' as shown and/or indicated on the aforesaid plat * * *." He owned lots 1 and 2 in Block 87, being the land at the southeast corner of 30th Street and Philadelphia Avenue. As will be noted, the lots bind on the east side of Philadelphia Avenue and, therefore, appellant's father acquired under his deed title to the middle of Philadelphia Avenue pursuant to Chapter 684 of the Acts of 1892 now codified as Code (1966 Repl. Vol.) Art. 21, § 107.

After the acquisition of title from appellant's father and others the Commission proceeded with construction of the road from Ocean City to Fenwick Island. Unfortunately, Philadelphia Avenue and the various lot lines were not accurately laid down on the Commission's plat, a fact here conceded by all parties. A local surveyor was retained by the Commission to resurvey the area and lay down the road as actually constructed. The product of his work is here reproduced as plat 2, which the reporter is also directed to have printed. (See p. 406 *infra*.) After the completion of that plat in 1952 (it is claimed that the inter-

vention of World War II slowed down this settlement) a deed
was prepared on behalf of the Commission from appellant's
father to the Commission. Instead of conveying to the Commis-
sion land "lying between the lines designated 'right-of-way lines'
as shown and/or indicated on the aforesaid plat * * *," (the
form used in the 1940 deed and the form then commonly used
by the Commission) the 1952 deed conveyed by a precise de-
scription as follows:

> "Beginning for the same at a point in the Northerly
> line of Lot No. 1, Block 87, as said Lot No. 1 is shown
> on the plat of the Sinepuxent Beach Company, re-
> corded among the Land Records of Worcester County,
> in Plat Book O.D.C. No. 1, Folio 2, and also in Plat
> Book O.D.C. No. 2, Folio 13, said point of beginning
> situated 1.96 feet, measured Southeasterly along the
> Northerly line of said Lot No. 1, from the North-
> west corner of Lot No. 1, thence binding along a part
> of the Northerly line of Lot No. 1, S. 64°—11'—00",
> E. 120.02 feet, to intersect the Easterly right-of-way
> line of the state highway leading from Ocean City to
> the Delaware State Line; thence, binding along said
> Easterly right-of-way line, S. 26°—46'—00", W. 100.-
> 02 feet, to intersect the line of division between Lots
> Nos. 2 and 3 of Block 87, as said lots are shown on
> the aforesaid plat of the Sinepuxent Beach Company,
> thence, binding along a part of the line of division be-
> tween said Lots Nos. 2 and 3 N. 64°—11'—00", W.
> 120.02 feet, to intersect the Westerly right-of-way line
> of the state highway leading from Ocean City to the
> Delaware State Line; thence, binding along said West-
> erly right-of-way line, N. 26°—46'—00", E. 100.02
> feet, to the place of beginning."

The deed also contained the following language:

> "It is understood that this deed and the attached
> plat is in substitution for and in lieu of the deed and
> attached plat from Frank Fertitta to the State of Mary-
> land to the use of State Roads Commission dated Feb-

ruary 17, 1940, and recorded among the Land Records of Worcester County in Liber JEB No. 3, folios 471 and 472."

It will be observed from an examination of the plat that Fertitta was left with a strip between the road right-of-way as actually laid down and Philadelphia Avenue as laid down on the original Sinepuxent Beach plat (but never improved) varying in depth from .3 of a foot on the south end to 1.9 feet on the north end. Philadelphia Avenue was originally laid down to be 60 feet in width. Accordingly, Fertitta claims 30 feet of this unopened street fronting on Lots 1 and 2 of Block 87.

It is to be noted that Fertitta's father, who may or may not have been represented by counsel, did not require the Commission to follow the practice that some careful title counsel would have followed of requiring the Commission to convey to Mr. Fertitta the land originally conveyed by him to the Commission followed by a new deed from him with the proper description to the Commission.

Appellee (Bay Shore) obtained a quit claim deed from the Commission on February 27, 1961. Parcel No. 2 in that deed is a strip approximately 60 feet wide by 300 feet long lying between Lots 1 to 6, inclusive, of Block 87 and Lots 7 to 12, inclusive, of Block 88 on the original Sinepuxent Beach plat, being the bed of Philadelphia Avenue as there laid down between 29th and 30th Streets, except for a small portion thereof at the south end of the block apparently included within the corrected State Roads Commission right-of-way, sometimes referred to as "Ocean Highway" and as "Coastal Highway." Parcel No. 3 is a similar parcel representing Philadelphia Avenue between 30th Street and 31st Street.

The quit claim deed from the Commission contained the following language:

"Subject to and excepting from the operation and effect of this deed any and all rights and reservations that may have been granted or reserved by former owners of this property or their predecessors in title and/or covenants or restrictions which may have been

established with respect to said land by such former owners or their predecessors in title."

The land owned by Bay Shore includes land in Block 90 described as being the westernmost parts of the lots there laid down lying between the Coastal Highway and the easternmost line of Philadelphia Avenue acquired by deed from Cullen S. Jenkins and wife, a carefully prepared deed. It is specifically noted that in this deed from Jenkins to Bay Shore in 1959 Jenkins purported to convey all of Philadelphia Avenue south of the land of Fertitta and north of 29th Street. Opposite the land of Fertitta and on to the north Jenkins purported to convey the westernmost half of Philadelphia Avenue. The description called for the southern boundary of Fertitta's land as one of the lines. A part of that parcel was contained in the 1961 quit claim deed from the Commission to Bay Shore.

Fertitta sued Bay Shore in ejectment as to the thin sliver of land lying between the Ocean Highway as described in the 1952 deed and Philadelphia Avenue and also as to the eastern half of the bed of Philadelphia Avenue opposite Lots 1 and 2 of Block 87, after Bay Shore in 1964 opened the Arnold Palmer Driving Range and placed blacktop surfacing on a part of the disputed land.

The trial court entered judgment for the appellee. It held Fertitta to be without title because there was no deed from the Commission to Fertitta's father executed in accordance with what is now Code (1966 Repl. Vol.) Art. 21, § 1.

The trial court was correct in holding that the plaintiff must recover by the strength of his own title and not the weakness of the title of his adversary. In *Richardson v. B. & D. B. R. Co.,* 89 Md. 126, 42 A. 938 (1899) our predecessors said:

"In this State it is well settled that in actions of ejectment the plaintiff must show that he has a *legal* title and the right of possession in the land." (emphasis in original) *Id.* at 128.

After the adverse judgment in the trial court and within the 30 day period provided for revision of judgment Fertitta moved that the case be transferred to equity. The motion was denied.

It was contended in the trial court and is here contended by Fertitta that the recording of the 1952 deed from her father to the Commission was in substitution for and in lieu of the original deed and that this thereby vested him with title to the sliver of land between Coastal Highway and Philadelphia Avenue with the consequent rights in Philadelphia Avenue.

There can be no question but that Fertitta's father divested himself of *legal* title to the land in question when he executed the first deed to the Commission. The question, therefore, arises as to what, if any, effect should be given to the subsequent conveyance to the Commission. 26 C.J.S. *Deeds,* § 174 states:

> "What a court may do in the cancellation of a deed the parties may do voluntarily, and under the facts of particular cases it has been held that, if an unrecorded deed is canceled by the consent of the parties thereto, it may operate to restore the estate to the grantor, if the rights of third persons have not intervened. So, *as between the parties and persons with notice, a deed, although recorded, is vacated and annulled by the acceptance by the grantee of a subsequent inconsistent deed from the grantor."* (emphasis added)

23 Am. Jur. 2d, *Deeds,* § 287 states:

> "A deed of confirmation may be appropriately utilized in order to remove doubts as to the operativeness of a prior deed to convey title to the land intended. For example, a mistake in the description of the land conveyed may be corrected by a subsequent deed executed by the same grantor for the purpose of correcting the description and confirming in the grantee the title to the land intended to have been described in the prior deed, and the two deeds, taken together, will operate to pass the title to the grantee named therein. Or, as the rule is sometimes stated, where equity would compel a grantor to correct a mistake in the description of land intended to be conveyed, he may do voluntarily what might thus be enforced. *Generally, the second deed operates according to the*

*intention of the parties to vacate and nullify the earlier
deed, and acceptance of such deed by the grantee con-
stitutes an election to take the land comprised in the
correcting deed and to relinquish title to the land con-
veyed by the earlier deed."* (emphasis added)

Appellee urges upon us that the Commission can only be di-
vested of title by its duly executed deed.

It does not appear from the record whether Bay Shore had
actual notice of the second deed from Fertitta's father to the
Commission. Some of the memoranda filed in the proceeding by
Fertitta state Bay Shore had notice and a comment to that
effect during trial by Fertitta's counsel was not disputed, but
there appears to be no such evidence in the case and no actual
concession to that effect. The careful manner of preparation of
the deed to Bay Shore and the way in which it calls for the
line of Fertitta might well give rise to an inference as to such
knowledge gleaned from the land records of Worcester County.

In *Grayson v. Buffington,* 233 Md. 340, 196 A. 2d 893
(1964) we were concerned with a situation where a deed was
executed conveying a 20,882 square foot parcel of land out of
a farm to a church group. The deed was not recorded until
after a subsequent deed of the farm which failed to mention the
out conveyance. The chancellor concluded that the purchaser
of the larger tract had full knowledge of the location of the
reserved parcel. Chief Judge Prescott there said:

"From the above, it is obvious that appellants' deed
was made upon a good and valuable consideration, and
it was recorded prior to the Church deed; hence if it
were 'made bona fide' in the eyes of the law, it, pur-
suant to Section 13, *supra,* must be preferred. The
appellants quote from the early case of *Busey v. Reese,*
38 Md. 264, 270, as follows: 'To entitle the deed first
recorded to be preferred, nothing more is required than
that it be made bona fide and upon a good and valuable
consideration.' There can be no doubt that this is a
correct exposition of the law, but it, too, poses the
critical question involved in the instant case as to
whether the deed was 'made bona fide' in the eyes of
the law.

"In order for the first recorded deed to be preferred under the statute, it is necessary that the grantee therein be in the position of a bona fide purchaser. *Busey v. Reese, supra; Willard v. Ramsburg,* 22 Md. 206. And it is well settled that one who purchases real property, with actual knowledge of prior equities, is not protected as a bona fide purchaser, but such a purchaser takes the property subject to the known equities, which are enforceable against him to the same extent that they are enforceable against the vendor. *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 450, 171 A. 2d 736; *Blondell v. Turover,* 195 Md. 251, 257, 72 A. 2d 697; *Lissau v. Smith,* 215 Md. 538, 547, 138 A. 2d 381. The reason for the rule is so universally known and recognized that it seems superfluous to state it. However, IV *American Law of Property,* § 17.11, states it succinctly and well; so, even at the risk of being tedious, we repeat the same: '* * * [C]ourts and legislatures early took the view that if the object [of the recording statutes] was to protect purchasers from secret and unknown conveyances, these parties did not need a statute to protect them from one of which they had knowledge or notice. Except, therefore, under the few acts of the pure-race type, a purchaser with notice cannot invoke protection.' At this point, it may be noted that Section 16, *supra,* specifically provides that a deed recorded after the time prescribed by Section 10 shall be valid 'against all purchasers with notice of such deed.' This is another clear manifestation that the Legislature, in enacting the recording acts, did not intend to protect subsequent purchasers with actual knowledge of a prior conveyance of the property purchased.

"Applying the above principles of law to the facts of the instant case, wherein the appellants had actual knowledge of the Church deed before they accepted a conveyance of the property or paid the purchase price, we have no hesitation in sustaining the decree of the Chancellor." *Id.* at 343 and 344.

In *Blondell v. Turover,* 195 Md. 251, 72 A. 2d 697 (1950) our predecessors said:

"The law requires reasonable diligence in a purchaser of real property to ascertain any defect of title. When such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. When a purchaser has notice of a fact which casts doubt upon the validity of his title, the rights of innocent persons must not be prejudiced as a result of his negligence. *Brush v. Ware,* 15 Pet. 93, 112, 10 L. Ed. 672, 680. A purchaser of land who is not a *bona fide* purchaser without notice takes the land subject to any prior equity and holds it as a constructive trustee in favor of a third person claiming under a prior contract of sale. *Smoot v. Rea,* 19 Md. 398, 412. In determining whether a purchaser had notice of any prior equities or unrecorded interests, so as to preclude him from being entitled to protection as a *bona fide* purchaser, the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. *Baynard v. Norris,* 5 Gill 468, 483, 46 Am. Dec. 647; *Higgins v. Lodge,* 68 Md. 229, 235, 11 A. 846, 6 Am.St.Rep. 437. In other words, a purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect." *Id.* at 257.

In the old case of *Smoot v. Rea,* 19 Md. 398 (1863) Rea bought land near Crotcher's Ferry in Dorchester County at a sheriff's sale of lands of Thomas Smoot in 1843. On January 1, 1844, an agreement was entered into between Rea and Thomas H. Smoot for sale to Smoot. Deed was to be given when demanded or as soon as the District Court could deter-

mine Rea's title. Thomas H. Smoot in 1847 sold to his father, Thomas Smoot, what was intended to be a half of the lands and an agreement was entered into between the two Smoots and Rea as to what was to be conveyed to each. Payment was made but no conveyance was made. Rea sold to Andrews in 1851. Thomas H. Smoot sued in 1852. Rea claimed authority from Thomas Smoot (the father) to make sale. Judge Bartol for this Court said:

> "2nd. As to the rights of Andrews. We are clearly of opinion that he cannot claim to be protected as a *bona fide* purchaser without notice.
>
> "Apart from the testimony of Rea, who says, 'I have very little doubt that he (Andrews) knew all the circumstances of the sale to Thomas H. Smoot, and the division between the Smoots,' Andrews, in his answer, states that he was informed by Rea of the contract of division between Thomas Smoot and Thomas H. Smoot, and in his deed from Rea, the land conveyed is described as the property 'which Rea has contracted to sell to Thomas Smoot, senior, and by the authority of Smoot hereby resold.'
>
> "With these facts before us, it is impossible to say that Andrews stands in the position of a *bona fide* purchaser without notice. It is well settled, that 'what is sufficient to put a purchaser on inquiry, is good notice, that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it.' *Magruder v. Peter,* 11 G. & J. [217,] 243. *Price v. McDonald,* 1 Md. [403,] 419. Many other authorities might be cited to the same effect.
>
> "Andrews having purchased with notice of the previous contract of sale, he is subject to the equities existing between Rea and the complainants. In such case, he is to be treated as a trustee of the first vendee; he stands upon the same equity as his vendor, and will be decreed to convey in the same manner as the original vendor under whom he claims. See 2 Story's Eq. sec. 784." *Id.* at 412.

We are of the opinion that the effect of the second deed from Fertitta's father to the Commission was to vest equitable title in Mr. Fertitta to the land improperly conveyed in the first deed to the Commission, a title which could have been perfected legally by a subsequent conveyance from the Commission to him. Therefore, if Bay Shore had actual knowledge of the second deed from Mr. Fertitta to the Commission, Bay Shore was not a *bona fide* purchaser for value. Accordingly, we shall remand the case without affirmance or reversal under Maryland Rule 871 for further proceedings. It should be then transferred under Maryland Rule 515 to equity. The trial court should then determine what, if any, notice Bay Shore had of the claim of Fertitta under the second deed to the Commission. In determining this the court may take into consideration that the quitclaim deed from the Commission to Bay Shore contained the language:

> "Subject to and excepting from the operation and effect of this deed any and all rights and reservations that may have been granted or reserved by former owners of this property or their predecessors in title and/or covenants or restrictions which may have been established with respect to said land by such former owners or their predecessors in title."

It also may consider what, if any, knowledge of the second Fertitta deed was necessary to prepare the conveyance to Bay Shore; whether, in obtaining the quitclaim deed from the Commission, Bay Shore was obliged to search the grantee index in such manner as to become cognizant of the second Fertitta deed to the Commission; and whether community knowledge of the Philadelphia Avenue-Coastal Highway situation reached Bay Shore's officers in such manner as to put them on notice of the second Fertitta deed.

*Remanded for further proceedings without affirmance or reversal, costs to abide the final result.*