## PYRAMID CONDOMINIUM ASSOCIATION

v.

## William MORGAN, et al.

### Civ. No. JFM–84–1719.

United States District Court,
D. Maryland.

Jan. 31, 1986.

Supplemental Opinion Feb. 28, 1986.

See also, 606 F.Supp. 592.

Oren R. Lewis, Jr., Lewis, Wilson, Lewis & Jones, Fairfax, Va., Charles Rosolio, Towson, Md., for plaintiffs.

Howard G. Goldberg, Smith, Somerville & Case, Baltimore, Md., for defendant Morgan.

Jay Morstein, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant A.T.E.C.

## MEMORANDUM

MOTZ, District Judge.

This is an action brought by the Pyramid Condominium Association against William Morgan and A.T.E.C. Associates, Inc., the architect and the material and geophysical engineers involved in the design and construction of the condominium. The defendants have implead as third party defendants a number of other companies which

performed various facets of the construction or engineering work.

Pending are motions for summary judgment filed by Morgan and A.T.E.C., joined by several of the third party defendants, based upon the ground that plaintiff's claims are barred by limitations. The parties agree that Maryland's three year statute of limitations applies. The parties also agree that the statute of limitations began to run when plaintiff knew or reasonably should have known of the alleged wrongs upon which its cause of action is based. The critical question is when that event occurred.

Defendants point to numerous facts demonstrating that plaintiff had knowledge of defects at the Pyramid substantially more than three years before this suit was filed on April 27, 1984. Minutes of meetings of plaintiff's board of directors as early as July 30, 1977 refer to problems with the air conditioning system, and on May 22, 1978 the board discussed "several water problems which the building is suffering on the exterior end with leaks." The board commissioned an inspection by Jimmie Critchfield, a professional engineer, who submitted a letter report dated June 23, 1978, detailing various construction problems. Critchfield indicated that in his view the building was in need of considerable remedial work, and he suggested that a further investigation (including materials testing) be made of the structural and mechanical systems in the building. The board obtained another report from the C.C. Murphy Company on October 2, 1978, which reflected cracking problems in the concrete. While on an almost continuous basis thereafter the board discussed and considered construction problems and took various steps to try to repair manifold items of damage, including ones resulting from water leakage, it did not follow up on Critchfield's suggestion that a more complete investigation be conducted. In April 1981, as the problems continued, the board toured the building and inspected numerous cracks, faults and deterioration in several units. After the tour the board authorized the hiring of Abel Schwartz, another engineer, to make a study of the Pyramid and to make recommendations for long term maintenance. Schwartz's report, dated April 27, 1981, was received by the board on April 30, 1981.[1]

The problems at the condominium continued. In 1982 plaintiff hired the structural engineering firm of George, Miles & Buhr, to conduct another inspection. This action was instituted approximately two years later. In 1985 plaintiff hired Donald W. Vannoy, a professor of civil engineering at the University of Maryland, as an expert witness. Dr. Vannoy reached the conclusion that the water problems at the Pyramid were caused primarily because salt had been used as an admixture in the concrete of the building and that flashing to control water run off had not been incorporated into the building's design or construction.

Against this background defendants contend that plaintiff's cause of action accrued substantially more than three years before this suit was filed, specifically in June 1978 when Critchfield submitted his report suggesting that a more extensive engineering study be conducted. In reply, plaintiff makes the rather remarkable contention that it did not know, and reasonably should not have known, of the wrongs upon which this action is based until after the action was instituted. Plaintiff argues that limitations did not begin to run until 1985, when Vannoy submitted his litigation report setting forth what he perceived to be the causes of plaintiff's problems.

Summary judgment may, of course, be granted only where there is no genuine dispute as to any material fact. Furthermore, the burden is upon the moving party to establish that it is entitled to summary judgment, and all reasonable inferences from established facts must be drawn in favor of the non-moving party. *See, e.g., Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979); *Donovan v.*

---

**1.** The fact that this suit was filed on April 27, 1984 strongly indicates that although it now contends that its cause of action did not accrue until later, at the time it filed suit plaintiff perceived that the Schwartz report might be deemed to trigger the running of the statute.

*Porter,* 584 F.Supp. 202, 209 (D.Md.1984). While these rules are appropriately strict, it is clear that defendants are entitled to summary judgement here.

Maryland law indisputably governs the limitations question. *See, e.g., Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1299 (4th Cir.1983); *Sasso v. Koehler,* 445 F.Supp. 762, 765 (D.Md.1978). The "discovery rule" has long been applied under Maryland law to claims involving alleged professional malpractice in connection with construction projects. *See Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 443–44, 258 A.2d 177 (1969); *Sisters of Mercy v. Gaudreau, Inc.,* 47 Md.App. 372, 377–78, 423 A.2d 585 (1980). The Maryland Court of Appeals has now ruled that the "discovery rule" is generally applicable to all limitations questions. *See Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981).

In *Poffenberger* the court indicated that the "knew or reasonably should have known" standard would be met if the plaintiff had "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry ... with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." 290 Md. at 637, 431 A.2d 677 quoting *Feritta v. Bay Shore Development Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969). As plaintiff properly conceded, at the oral argument held on December 11, 1985, *Poffenberger* makes clear that a plaintiff is charged with expert knowledge not at the time that he receives a report from an expert but at the time he is aware of enough facts to know he needs to consult an expert. It is within three years of that date that suit must filed.

■ Defendants here are correct in contending limitations began to run in June 1978 when plaintiff received the Critchfield report. Prior to that time plaintiff had no reason to know that there were fundamental, structural defects at the condominium. However, in the report Critchfield expressly advised plaintiff's directors that they should have a further and more extensive engineering study conducted. This was confirmed by the C.C. Murphy report. Moreover, for several years thereafter, the problems became exacerbated, and in April 1981 plaintiff hired Schwartz to conduct another study of the water leakage problem. Yet another report was obtained from George, Miles & Buhr in mid 1982 and the suit was still not filed until almost two years later.

*Sisters of Mercy v. Gaudreau, Inc.* is analogous to this case. There, soon after a building designed by the defendant was completed, the plaintiff noticed water leakage but was unaware of the cause of the problem. Repeated efforts to fix the problem were unsuccessful. In 1979 the plaintiff's lawyer obtained a report from another architect describing the cause of the leaks to faulty design by the defendant. The court held that the action which was filed more than three years after plaintiff was put on notice of the leakage problem, but within three years of the 1979 report, was untimely.

Despite *Sisters of Mercy,* plaintiff here argues that it was not until it received the *Vannoy Report*—after suit was filed— that it knew the "cause" of its problems and that limitations began to run. Plaintiff relies heavily upon Vannoy's affidavit in which he states his opinion that the causes to which he attributes the leaks—the salt in the cement and the lack of flashing—would not have been discovered during the course of a reasonable inspection of the building. Plaintiff argues that this affidavit itself creates a dispute as to a material issue of fact which precludes the granting of a motion for summary judgment.

The fallacy in plaintiff's argument is that the question of when a plaintiff knew or should have known that he had a cause of action is not purely a question of fact but a mixed question of fact and law. Limitations statutes embody fundamental public policies, including the protection of a defendant from having to incur the substantial expense of a trial in the event that a plaintiff's action is untimely. Moreover, the General Assembly has determined that three years is a sufficient length of time for a plaintiff to complete its investigation

and to know whom it should sue and on what basis. *E.g., Lutheran Hosp. v. Levy,* 60 Md.App. 227, 237–38, 482 A.2d 23 (1984). It is the function and responsibility of the Court, not an engineering expert hired by a plaintiff for litigation purposes, to determine whether there is sufficient evidence to submit to the jury the question of when the plaintiff reasonably should have discovered the wrong upon which his action is based. *See, e.g., Booth Glass Co. v. Huntingfield Corp.,* 304 Md. 615, 619, 500 A.2d 641 (1985); *Pierce v. Johns-Manville Sales Corp.,* 296 Md. 656, 664, 464 A.2d 1020 (1983); *O'Hara v. Kovens,* 60 Md.App. 619, 629, 484 A.2d 275 (1984). Here, the severity of the problems experienced by plaintiff, the continuing nature of those problems, the fact that as early as 1978 an engineer hired by plaintiff recommended that a more extensive inspection be conducted (including materials testing), the fact that plaintiff did not follow up on this recommendation and the fact that the lack of flashing—which Vannoy says would not have been discovered by a reasonable investigation—was apparent from the face of the drawings, all demonstrate that under the *Poffenberger* test plaintiff's action is time barred.

■ Plaintiff makes a subsidiary argument as to Morgan. It contends that the fact that Morgan certified to the building inspection department of Ocean City, Maryland that the drawing and specifications for the Pyramid conformed with the applicable building code and that building's construction complied with those drawings and specifications constituted a fraud and estops him from asserting limitations. Until the construction problems at the Pyramid became apparent, plaintiff perhaps could have relied upon that certification. However, once the problems did become overt plaintiff was put on a duty of inquiry under Maryland law and cannot rely upon the alleged fraud to toll the limitations statute. *See, e.g., Sasso v. Koehler,* 451 F.Supp. 933, 935 (D.Md.1978); *cf. Leonhart v. Atkinson,* 265 Md. 219, 227, 289 A.2d 1 (1972).

For these reasons the defendants' motions for summary judgment is granted. A separate order to that effect is being entered herewith.

### SUPPLEMENTAL MEMORANDUM

On January 31, 1986 this Court entered a memorandum and accompanying order granting the motions for summary judgment filed by the defendants. By letter dated February 6, 1986 the Court withdrew the memorandum and order in light of the decision of the Maryland Court of Appeals in *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313 (1986).

The Court has now reviewed the opinion in *O'Hara v. Kovens* and supplemental memoranda submitted by the parties. The memorandum and the order of January 31, 1986 are hereby reaffirmed. In *O'Hara v. Kovens* the Court of Appeals held that it is for the jury and not the court to make factual findings relating to limitations issues. However, the Court also indicated that "how the discovery rule operates in different types of cases is for the court to determine." (op. at 298, 503 A.2d 1313). Further, it is clear from the Court's decision that a court may, applying traditional summary judgment standards, grant a motion for summary judgment where "reasonable men, on ... [the] record properly instructed as the applicable law, could not fail to find that the plaintiff ... [was] on notice more than three years before ... suit was brought." (op. at 301, 503 A.2d 1313). In this connection, the court, quoting from *British Launderers' Association v. Borough of Hendon Rating Authority,* [1949] 1 K.B. 470, drew a distinction between "primary facts" and "conclusions from primary facts." The latter as well as the former are usually to be made by the tribunal of fact but "whether the conclusion [of fact] is one which could reasonably be drawn from the primary facts" is a question of law. (op. at 293–94, 503 A.2d 1313).

In the present case none of the "primary facts" are in dispute. As to the conclusion or inference to be drawn from those facts, this Court holds as a matter of law that reasonable men could not differ that under the applicable standards enunciated in this

Court's original memorandum plaintiff was on notice of the accrual of its cause of action more than three years before suit was instituted. The irrationality of plaintiff's position is demonstrated by its assertion that it was not on notice of the accural of the cause of action until after suit was in fact filed.

A separate order granting defendants' motion for summary judgment and entering judgment on their behalf is being entered herewith.