# THISTLE MILLS COMPANY OF BALTIMORE COUNTY *vs.* JOHN M. BONE AND JAMES H. GAITHER.

*Specific Performance—Two Contracts for the Sale of the Same Land—Option to Purchase.*

When the owner of land has given to one party a valid option to purchase it, which is exercised within the time limited, another party to whom the owner subsequently agrees to sell the same land is not entitled to maintain a bill for a specific performance of his contract, although it was made before the first party declared his purpose to exercise the option.

Specific performance of a contract for the sale of land will not be decreed unless so to do is fair and equitable under all the circumstances of the case; nor will it be decreed if the enforcement of the contract between the immediate parties thereto would operate incidentally as a fraud upon others.

Defendant made a contract with A by which the latter acquired the option to purchase certain real estate for a designated sum before a certain date. Before the expiration of the option, defendant signed a paper acknowledging the receipt of a sum from the plaintiff as part of the purchase-money for a portion of the same land, which defendant agreed to sell him. Subsequently A notified defendant that he would exercise the option so given to him, and a contract for the sale of the whole property was made between A and the defendant. Upon a bill for the specific performance by plaintiff, the evidence was to the effect that the plaintiff was notified at the time the agreement with him was made that it would be subject to the exercise of the option held by A. *Held*, that under these circumstances, plaintiff is not entitled to demand specific performance.

Appeal from a decree of the Circuit Court for Baltimore County (FOWLER, C. J., and BURKE, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Randolph Barton, Jr.*, and *Redmond C. Stewart* (with whom were *Barton, Wilmer & Ambler* on the brief), for the appellant :

The contention of the plaintiff is this : (1.) That conceding that at the time of the making of its contract with Bone, Gaither held an option covering the same property, still the plaintiff's contract with Bone was absolute and unconditional. (2.) That this absolute unconditional contract was made before Gaither had closed his option or had made with Bone an absolute agreement for the purchase of the property, and that the mere existence of Gaither's option, prior to the plaintiff's contract for the property, gave Gaither no specific lien as against the property, superior to that given by said contract. The real question involved is, how far does a mere *optional contract*, if revoked before acceptance, entitle the holder to specific performance at the hands of a Court of equity ? This precise question seems never to have been before this Court, although very analogous questions have been passed upon by it.

If the facts show that Bone made, as plaintiff contends, an absolute unconditional contract for the sale of the property, such as would be susceptible of specific enforcement in the absence of some superior right in a third person, the existence of such alleged superior right and its *legal effect*, are matters of controlling importance in determining whether specific performance should be decreed. If the evidence is what plaintiff claims it to be, Bone made with the plaintiff a binding, absolute contract, which, so far as he is concerned, plaintiff is entitled to have him carry out. As against *him*, plaintiff's rights are at least as great as Gaither's, and if through Bone's action, deliberate or inadvertent, two inconsistent contracts have been made, both of which cannot be enforced, then certainly as between the holders of such contracts, the relative *legal* superiority thereof will determine which shall stand. If, for instance, Bone had made an absolute engagement with Gaither, intended by both to be fully binding at law, but owing to some technical omissions in fact absolutely *nudum pactum ;* and if, with such an agreement in existence, Bone had made with plaintiff a totally inconsistent agreement in binding legal form, certainly Gaither's claims, based on equitable or moral grounds merely,

would have no effect on the rights of the plaintiff under their legally binding contract.   A Court of equity is guided by legal principles as well as a Court of law, and if it should allow such considerations as these to prevent its giving full effect to the legally sufficient contract, it would practically be ratifying and enforcing the prior agreement, although in law such agreement was null and void.   *Coleman* v. *Applegarth*, 68 Md. 29 ; *Popplein* v. *Foley*, 61 Md. 381.   We have therefore to consider: 1. *The Evidence.*  Was plaintiff's contract absolute or conditional ?   2. *The Law.*  How far does the existence of a mere option upon property give the holder a lien in equity superior to that of one subsequently making an absolute contract for the purchase of the same property ?

It is admitted by both sides that before making its purchase the officers of the plaintiff company knew that Bone had given some sort of option upon it to some one else.   They claim, however, that Bone represented that he still had the right to *sell*, or at least to sell this part of the property (the option covered the whole tract including this.)   It is not pretended that plaintiff's officers knew the holder of the option, or its terms, or its form.   It might have been, for all they knew, one without consideration, in which case it would have had no binding force whatever, either in law or equity, and plaintiff would have been justified in buying the property, even though knowing the exact nature of the option and in the face of the protest of the holder.   (See *Coleman* v. *Applegarth*, 68 Md. 21.) But all they knew was that Bone told them " he had the privilege of selling the mill, and the water-power, and the houses below the mill."

If, in fact, Gaither's option gave him no *lien* on the property which he could have specifically enforced, then unquestionably there was nothing in law or equity to prevent the *plaintiff* from acquiring a lien on the property which was susceptible of specific enforcement.   Plaintiff's contention is that Gaither's *option* gave him no such lien.   It was not at the time that plaintiff's contract was made, susceptible of specific performance against Bone in a Court of equity.

A well-recognized distinction of course exists between contracts which may be specifically enforced, and those which, if broken, merely give the injured party a right of action at law for damages.   In such cases the party violating his contract may deliberately prefer to pay his damages rather than carry out his contract, and he has the right to make this choice. *Black* v. *Woodrow*, 39 Md. 217.

An optional contract, *before final acceptance*, is a contract of this nature.   It is merely *an offer to make a contract.*   Until accepted, it does not become a *contract*, and if the offeror withdraw it before acceptance, the result is that no contract was ever made which a Court of equity could enforce.   See note on options in 21 L. R. A. 129.

The contract made by Bone was to keep open an offer to sell.   He violated this contract (let us suppose) and withdrew the offer before the same had been accepted by Gaither.   What are the consequences?   Gaither has a *right of action* against Bone for breach of his *contract to keep open his offer ;* but as the offer was *withdrawn*, no *contract of bargain and sale* ever was consummated, and therefore nothing which the Court could specifically enforce.   *Tyson* v. *Watts*, 1 Md. Ch. 1.

The cases holding that optional contracts may be specifically enforced are, as pointed out in the above note, cases in which the option (offer) had been *accepted* before withdrawal, which removed the objection of want of mutuality.  In this case, Bone's action in selling the property to another was equivalent to a formal withdrawal of his offer to sell to Gaither.   *Coleman* v. *Applegarth*, 68 Md., p. 30.

That *"mutuality,"* is an essential ingredient to contracts which will be specifically enforced in equity is a well-established doctrine in this Court.   *Tyson* v. *Watts*, 1 Md. Ch. 18; *Duvall* v. *Myers*, 2 Md. Ch. 401; *Gelston* v. *Sigmund*, 27 Md. 334; *Crane* v. *Gough*, 4 Md. 316, 331; *Billingslea* v. *Ward*, 33 Md. 48; *Rider* v. *Gray*, 10 Md. 282; *Geiger* v. *Green*, 4 Gill, 472; *Canton Co.* v. *N. C. R. R.*, 21 Md. 397; *Fardy* v. *Williams*, 38 Md. 502; *Md. Construction Co.* v. *Kuper*, 90 Md. 529; *Coleman* v. *Applegarth*, 68 Md. 21.

Had Gaither, prior to the execution of plaintiff's contract, taken a deed for the property, or even an absolute contract of bargain and sale, as distinguished from a mere option in *Coleman* v. *Applegarth*, he would thereby have acquired a *lien ;* in the first case at law, in the second in equity. He did neither. He took merely an *optional right to accept an offer*, which was not a contract for the sale of the property, and did not bind him to take it. His protection then consisted not in a right to enforce specifically a contract of sale which *had never in fact been made*, but in Bone's liability to him in a suit *at law* for breach of a contract to keep the offer open. 21 L. R. A., p. 128; *Tyson* v. *Watts*, 1 Md. Ch. 1; *Busey* v. *McCurley*, 61 Md. 436; *Girault* v. *Adams*, 61 Md. 1; *Powell* v. *Young*, 45 Md. 495.

Defendants will probably repeat here their argument below, that "general principles of equity" will forbid the Court to pass a decree, the effect of which will be to make Bone violate an existing contract with Gaither, and thus both subject him to liability to Gaither and inflict on Gaither a hardship. This argument leaves out of consideration, however, the fact that Bone must break either his contract with Gaither or his contract with the plaintff, and that in either case the injured party can sue him at law, and if, as we presuppose the evidence to establish, the plaintiff made with Bone in good faith, a contract of higher force than Gaither's mere *option*, it seems hardly to need argument to show that as between these two claimants to the land, the one having the higher and more specific rights should prevail.

*William L. Marbury* and *Jesse Slingluff* for the appellees :

It is respectfully submitted that a written agreement, based on a valuable consideration, specifying a given time in which a vendee shall have the right to purchase property at a fixed price, entered into by the owner of the land, is a legal contract and binding on the vendor or owner, and one which Courts of equity will enforce. *Maughlin* v. *Perry*, 35 Md. 352; *Richardson* v. *Hardwick*, 106 U. S. 145; 28 Am. & E. Ency. Law, 77.

That Gaither's option was a legally binding contract is hardly a debatable question, and if it was a legally binding contract, whether in form to be specifically enforced or not, certain it is and certain it must be that this Court will not make a decree to compel Bone to break it, no matter whether the plaintiff was aware of its existence at the time of making its contract or not.

With the knowledge that at the time it first began negotiations with Bone for the purchase of this property, that Bone had already given an option on it, the plaintiff certainly made the attempted purchase with its eyes open. Furthermore, it had notice sufficient to put it on inquiry as to the rights of Gaither under the option it knew to exist. Under these circumstances for it to come into a Court of equity and ask its assistance to compel the specific performance of its contract with Bone, is asking this Court to compel Bone to break a perfectly legal contract which was binding on him at the time he entered into the subsequent contract with the plaintiff, which subsequent contract was made under circumstances that would, without doubt, put the plaintiff upon inquiry as to the rights of the parties to the first contract. *Maughlin* v. *Perry*, 35 Md. 352; *Cochran* v. *Pascault*, 54 Md. 1; *Shriver* v. *Seiss*, 49 Md. 384; *Bamberger* v. *Johnson*, 86 Md. 18; *Horner* v. *Woodland*, 88 Md. 511; Fry, Specific Performance, sec. 44; Pomeroy, Specific Performance, secs. 35–46.

JONES, J., delivered the opinion of the Court:

This is an appeal from a decree of the Circuit Court for Baltimore County, dismissing the bill of the appellant (a corporation), which was filed in that Court to have enforced the specific performance of a contract which the appellant alleged it had made with the appellee, John M. Bone, for the sale to it by the said Bone of certain real property referrred to in the bill. The alleged contract was evidenced by a written paper which was set out in the appellant's bill and is as follows:

*Ellicott City, Md.*, 18—, '99.

Received of Thistle Mills Company, through Robert P.

Deal, check for two hundred and fifty dollars as deposit on sale of mill, water-power, land in Howard County, and houses below mill, the sum of six thousand dollars—being purchase price.

(Signed), JOHN M. BONE.

After alleging the making of the contract set out therein, the bill states that shortly after the making of the same the appellant was notified by letter from the appellee Bone, that he had sold the property referred to in the contract to other parties and would be unable to carry out the agreement made with the appellant, and that when the letter conveying this notification was received, the appellant "was preparing to examine the title to the said property, and (upon finding the same clear and unencumbered), to make payment to the defendant (Bone) of the balance due under said contract of sale." The bill was filed on the 24th of November, 1899, against John M. Bone as sole defendant. On the 5th of December, following, the appellee, James H. Gaither, intervened by petition in the case, alleging that on the 18th day of November, 1899, he had purchased from the appellee, John M. Bone, property which included that mentioned in the bill of complaint in the cause for the sum of fourteen thousand dollars, and had paid two hundred and fifty dollars as part of the purchase-price. For the terms of his contract of purchase, and the circumstances under which it was made, he referred to the answer of the appellee Bone, which was filed on the same day as the petition. He then asked to be made a party-defendant in the cause, with leave to answer and make defense for the protection of his rights. He was accordingly made defendant by order of the Court.

The answer of John M. Bone denies "that he ever made or entered into any agreement to sell" the land mentioned in the bill of complaint to the appellant, except subject to a condition and reservation stated in his answer. He admits that he signed a receipt for a check for two hundred and fifty dollars and then proceeds to state the circumstances under which the same was signed as follows: Being possessed of

certain property situated partly in Howard and partly in Bal-
timore County, generally known as "Gray's Mills" and con-
sisting "of some acres of land with the improvements
thereon, including a mill and several dwelling houses," on the
6th day of November, 1899, he "entered into an agreement
based upon a valuable consideration with . . . . James H.
Gaither, of Howard County, to sell the whole of said property
to him for the sum of fourteen thousand dollars, provided said
Gaither would take and pay for the same prior to the first day
of January, 1900." This "agreement took the form commonly
known as an option" and was evidenced by a written memo-
randum "made at the time and signed" by the respondent
Bone, in the words following: "I hereby, for the sum of one
dollar, give you, James H. Gaither, the option on all the prop-
erty bought by me at sale of the Martha E. Gray estate until
January 1, 1900. Price fourteen thousand dollars cash; no
commissions." The sum of one dollar, mentioned in this
agreement, was actually paid to the respondent by said Gaither.
The answer then avers that at and before the time of the hand-
ing to the respondent of the check and the obtaining from him
of the receipt referred to in the bill of complaint, the appellant
well knew that the respondent had made a contract to sell the
property mentioned in the agreement with Gaither above re-
cited, and had given an option thereon which was "then still
in force;" that the appellant had, through its agent, previously
made offers to the "respondent for said property—and several
attempts to purchase the same," which offers had been declined
by the respondent, he giving as his reason for so declining that
he had already agreed to sell the property in question as has
been stated; that the appellant had been informed of Gaither's
rights in the premises by Gaither himself; that when the
agent of the appellant offered to the respondent as part pay-
ment for the property, which is the subject of the alleged con-
tract of purchase by the appellant, the check referred to in the
bill of complaint, the said agent was "distinctly informed" by
the respondent that the acceptance thereof must be subject to
the condition that the holder "of the option which has been

mentioned" would consent to relinquish his said option, and that he (the respondent) signed" the receipt mentioned in the bill of complaint "with that understanding;" that immediately after signing said receipt, the respondent informed James H. Gaither of what he had done and asked Gaither "whether he would relinquish his claim under his said contract," and Gaither "promptly declined to do so and notified" the respondent "that he insisted upon his rights under the said contract, and had decided to exercise the same;" that the respondent immediately notified the appellant of "Gaither's action" and returned the check that he had received from appellant's agent; and then upon receipt of two hundred and fifty dollars paid him by Gaither executed and delivered to said Gaither the following contract for the sale to him of the property upon which Gaither had previously held the option which has been recited.

"This agreement, made this 18th day of November, 1899, between John M. Bone, of the first part, and James H. Gaither, of the second part : Witnesseth, that the said party of the first part does hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situated and lying in Baltimore and Howard Counties, better known as Gray's, and conveyed to said Bone by executors of Martha E. Gray, at and for the price of fourteen thousand dollars, of which, two hundred and fifty dollars have been paid prior to the signing hereof, and the balance is to be paid as follows : As soon as title is finished, and upon payment as above of the unpaid purchase-money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee. Taxes to be adjusted to day of sale, to be paid or allowed for by the vendor to November 18th, 1899."

Signed $\left\{\begin{array}{l}\text{John M. Bone,} \quad \text{[Seal.]} \\ \text{James H. Gaither,} \quad \text{[Seal.]}\end{array}\right.$

Test : J. H. Leishear.

It is then alleged that "Gaither has declared himself fully

satisfied with the title to the said property, and has demanded of the respondent a transfer of the same, at the same time tendering the purchase-price called for by the said contract of sale." The appellee Gaither, filed an answer to the bill to the effect that he had read the answer of John M. Bone, and, believing the same to be true, he adopted "said answer as his own in so far as the same is applicable to him."

Testimony was taken by both sides from which it appeared that the facts alleged in the pleadings were substantially free from dispute with the exception of the conflict shown by the evidence as to the allegation in the answer of John M. Bone, that when he received the check mentioned in the appellant's bill, and gave the receipt therefor set out in the bill, he informed the agent of the appellant, through whom the transaction was made, that his acceptance of the check must be subject to the condition that the holder of the option, of which he had informed this agent, would consent to relinquish the same, and that he signed the receipt therefor with that understanding. With reference to this allegation, the only parties who could have any knowledge of the facts upon which it was based were the defendant, John M. Bone, and the agent of the plaintiff (Deal), who delivered to Bone the check and took the receipt therefor. Bone testified there was an understanding as alleged in his answer accompanying the transaction in question. Deal denied that there was such an understanding, and testified that Bone told him at the time that he (Bone), had given a previous option upon the whole property "that he owned," but that he had the privilege of selling the part thereof which is the subject of controversy here.

It may be further said, in reference to the proofs in the case, that it does not distinctly appear, as alleged in the answer of Bone, that the plaintiff had been informed by "Gaither himself," of his (Gaither's) rights under any previous contract of sale or option of purchase affecting the property which was the subject of the alleged contract of the plaintiff, though there is evidence tending to prove this. But it does distinctly appear that the plaintiff, through the agents who conducted

the negotiations resulting in the alleged contract which the plaintiff is seeking to have enforced, had notice before and at the time of the making of the same that there was an outstanding option contract, which had been entered into by Bone, that affected the property the plaintiff sought to purchase; and it further appears that on the same day, but before the plaintiff's contract was consummated as alleged, the appellee Gaither, had decided to avail of and close his option, and had made the attempt to communicate with the appellee Bone, to that effect—moreover that he had incurred obligations upon the faith of its being carried out.

Upon this state of pleading and proof the Court below refused, and we think properly, to decree to the plaintiff the specific performance of the contract it is seekiug to have enforced. It will be seen that the only defense upon which the defendants have relied, or have opposed to the plaintiff's claim to relief, is the equity raised against it by the existence and the circumstances in connection therewith as set out in the answer of Bone, between the appellees, of the contract of the 6th of November, 1899, and the resulting contract of the 18th of the same month; and this is the only matter affecting the plaintiff's claim to relief that we need to deal with. The interposition of a Court of equity to decree specific performance cannot be claimed as a matter of right, but every application for this character of relief is addressed to the sound discretion of the Court, subject to established principles of equity; and whether the relief will be granted or refused upon application made depends on the circumstances of each particular case. *Miller Eq. Proc.*, sec. 656; *Semmes* v. *Worthington, et al.*, 38 Md. 298.

It may be useful to refer here to some of the rules, by which Courts are to be guided in considering and deciding upon the question, whether relief by way of specific execution of the contract is to be granted in any given case as laid down by the text-writers and adjudicated cases. It is held that the plaintiff must establish the contract he sets up by clear and satisfactory proof. *Penn* v. *McCullough*, 76 Md. 229;

*Semmes* v. *Worthington, supra;* and with the contract thus established, " in every case, the question is whether the exercise of the power is called for to subserve the ends of justice ; and unless the Court is satisfied that the application to it, for this extraordinary assistance, is fair, just and reasonable *in every respect,* it will refuse to interfere and leave the party to other remedies for redress" *Semmes* v. *Worthington, supra,* (p. 325.) Specific execution will not be decreed where, under all the circumstances, such a decree would be inequitable ; nor where the enforcement of the " contract between the immediate parties . . . . would operate incidentally as a fraud upon others." 1 *Eq. Jur.,* secs. 769 and 778c. The contract sought to be inforced " must be made under. circumstances which favorably commend it to the Court." *Chicora Fertilizer Co.* v. *Dunan,* 91 Md. 144. Now how will the case before us stand the test of these principles which are not only recognized in the authorities, but commend themselves strongly as promotive of the ends of justice ?

The necessities of the case do not require a critical examination into the testimony as respects the inquiry whether the plaintiff has, by satisfactory proof, established an absolute, unconditional contract according to its claim. We may say, however, that this can scarcely be affirmed of the evidence upon this point. The mere execution of the paper which is relied upon to evidence the alleged contract is not disputed, but whether this was intended, and was delivered to the plaintiff, as and for a final and absolute contract, is not made free of doubt. As has already appeared but two witnesses testified, or could have testified, as to the circumstances attending the execution and delivery of the paper in question. The defendant Bone, testified positively, and in a circumstantial manner, that when the paper described in plaintiff's bill was signed and delivered to plaintiff's agent, it was upon the condition and understanding that it was not to be considered as representing a final and conclusive contract on his part; and whether it would become such depended on whether he could succeed in stopping negotiations then in progress for a sale of his property

under the option contract of the 6th of November, 1899. The defendant's agent (Deal), denied this categorically, and gave his verson of the interview at which the paper in question was executed. Without undertaking to weigh probabilities, or to discuss further the evidence upon this aspect of the case, it may be affirmed of the evidence given by these two witnesses that it by no means clearly appears therefrom that the nature of the transaction between them on the occasion of the execution of the paper in question was such as the plaintiff claims it to have been.

But, if we assume that Bone intended and delivered the paper in question as an for a completed contract between him and the plaintiff, what then would be the state of case upon which the Court is asked to decree? The appellee Gaither held, at the time of the execution of this contract, the option contract of the 6th of November, 1899, and the plaintiff, through its agents, had notice that there were outstanding rights of purchase in favor of somebody, if, indeed, it was not known to these agents that the appellee Gaither, was the party in whose favor these rights existed; and there is some evidence that this was known to them. This option contract was not a mere offer to sell, which could be withdrawn at any time before acceptance; it was a binding and effective contract, which, by its terms, was at the time in question in full force. That a contract of the nature of this one, when supported by a consideration as this was, is valid and binding upon the party giving, and in favor of the party receiving it, we do not understand to be disputed; and to go no further for authority recognizing the legal force of contracts of this character, unilateral as they are in form and effect, we may refer to the decisions of this Court in the cases of *Maughlin* v. *Perry*, 35 Md. 352; *Coleman* v. *Applegarth*, 68 Md. 21. Further than this, Gaither, relying upon his legal rights under this option contract, and upon the faith of it, had, at the time the alleged contract of the plaintiff, now the subject of this controversy, was entered into between John M. Bone and the plaintiff's agent, already determined to exercise his right under the option to purchase the

property which it covered, and which included the property that the plaintiff's contract embraced, and in that connection had incurred obligations to other parties. Bone, upon being informed of this by Gaither, and upon the latter's refusal to relinquish his rights under the option contract, then executed to Gaither the completed contract, which is set out in the answer of Bone and proved in the evidence of the 18th of November, 1899, doing this, not in accordance with his own wishes and interests, nor in any sort of collusion with Gaither, but out of respect to the obligation he recognized as imposed by his prior contract of the 6th of November. Now, suppose that Bone, instead of recognizing this obligation, had, under the circumstances, repudiated it and refused to accord to Gaither what he had the right to demand of him, and had attempted to carry out the contract with the plaintiff as being more favorable to his own interests, would he not have been perpetrating a fraud upon Gaither? and would the plaintiff, with the notice it had before and at the time of the making of its alleged contract of the existence of prior rights with respect to the property which was the subject of it, not have been aiding and profiting by the wrong by insisting upon or receiving the performance of such contract? Does it not necessarily follow, therefore, that a Court of equity, by extending its aid to the plaintiff in the enforcement of its contract made under such circumstances, because Bone has done what it was legal and right he should do, would be aiding in the perpetration of a wrong? And can it be said that it would not be inequitable, under all the circumstances as they here appear, for the Court to interfere as between the parties now before it with the exercise of the extraordinary power which is here invoked? and would the Court be justified, under the circumstances, in ignoring, as it must necessarily do in granting plaintiff's application, the contract, complete and mutual in all of it terms, which Gaither held at the time of the filing of plaintiff's bill and which he had obtained, not with notice of and against the prior rights of others, but because he had the legal and, under the circumstances, the moral and equitable right to demand it and to have it executed?

It is argued on behalf of the plaintiff, that, notwithstanding the existence of the option contract of the 6th of November, 1899, between the appellees at the time the plaintiff's contract was entered into, the plaintiff under its contract acquired rights superior to those of Gaither under his option, because the plaintiff's contract was of a character that could be specifically enforced, but Gaither's being a mere right to have a contract was not such a one as could be so enforced; and that in consequence of this a lien in equity attached against the property in question in favor of the plaintiff but none in favor of Gaither.  The question whether Gaither could have had specific execution decreed of his option contract or not, need not be at all discussed; he is not here seeking a specific performance of it.  As a defendant, resisting an application for specific performance, he is not required to show the same strength of case as if he was a plaintiff seeking it.  *Pom. Eq. Jur.*, sec. 1405, page 464, note 1; *Sto. Eq. Jur.*, sec. 769. According to authorities already cited he is only required to show a state of case that makes it not "fair, just or reasonable" that there should be a decree against him.

As to the argument, with respect to the lien, that the plaintiff acquired by virtue of its contract, whatever right is acquired in the nature of a lien under and by virtue of a contract of the character of the one here asserted by the plaintiff is merely the right, in a proper case, to have a decree to bind or affect the specific property which is the subject of the contract.  This has relation to the remedy under the contract, and is an incident to it and not an element of it.  A party under such a contract does not acquire a lien, and therefore a right to specific performance, but in so far as he may be said to have a lien it is because he is able to show a case which, under all the circumstances, entitles him to have that form of relief.  In other words the right to specific performance and the lien, if there can be said to be any lien, are one and the same thing.  No principle of lien enters into a case like this or affects the conditions which the Court must find present as grounds for applying the specific remedy which is sought.  Without extending

this opinion further, we concur entirely with the Circuit Court for Baltimore County in the disposition it made of the case below, and its action will be affirmed, denying the specific relief here sought and leaving the parties "to assert whatever rights they may have in a Court of law."

*Decree affirmed.*

(Decided December 7, 1900.)