HOWARD HENRY ALLERS ᴇᴛ ᴀʟ. *v.* MORRIS KLEIN ᴇᴛ ᴀʟ.

GEORGE SHIELDS ᴇᴛ ᴀʟ. *v.* MORRIS KLEIN ᴇᴛ ᴀʟ.

[Nos. 39, 40, April Term, 1931.]

*Decided June 11th, 1931.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander* and *Nathan Patz,* submitting on brief, for the appellants.

*Rowland K. Adams,* with whom were *Joseph T. Parr, Charles T. Le Viness, 3rd, Rome & Rome,* and *Adams & Hargest,* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

Morris Klein, one of the appellees, acquired title to the leasehold property, No. 1429 Hoffman Street, Baltimore, Md., by deed dated June 10th, 1927, though not recorded until the 17th day of November of that year. In order to finance the purchase, he borrowed from the Paderewski Building Association the sum of $1,800, and, to secure the payment of this loan, he executed to that association a mortgage upon the property. On the 16th day of November, he conveyed this property to the Utility Finance Company, as that company had advanced to him a part of the purchase money therefor.

At or about the time of its purchase by Klein, Howard Henry Allers and Elizabeth Margaret Allers, his wife, appellants, were occupying the property as tenants, and their occupancy of it continued through the period of the execution of said mortgage and deed. While so occupying it, Klein, on the 23rd day of November, 1927, sold the property to them for the sum of $2,700. By the terms of the written agreement of sale, signed by Klein, Allers, and his wife, the sum of $50 of the purchase money was to be paid in cash, and the payment of the balance was to be secured "by 1st and 2nd mortgages," and, upon the payment of the unpaid purchase money, Klein was to convey unto Allers and wife a good merchantable title in and to said property, subject only to an annual ground rent of $40. In the agreement of sale, Klein also agreed "to paper the house and put in electricity."

About two weeks after the agreement was signed, and before the execution of the mortgages mentioned therein, Klein called upon Allers and his wife, at their home. It was then and there agreed between Klein, as vendor, and them, as vendees, as claimed by them, that instead of securing the payment of the balance of the purchase money by first and second mortgages, as provided in the agreement, they should pay eight dollars per week, payable every two weeks, a part of which was to be applied to the payment of interest, a part to the payment of the expense of maintenance, and the balance to the payment of the unpaid purchase money; while the claim is made by Klein that the amount which was then agreed upon to be paid every two weeks was to be paid as rent for the property, and that the sale that had hitherto been made was then abrogated or canceled, because, as stated by him, Allers and wife were not able to consummate the sale, and so told him.

The amount agreed upon was, in the most part, paid by Allers and wife, with reasonable promptness, to August, 1929, failing only in a few of said payments. On August 1st, 1929, they sold the property for the sum of $3,000, as shown by a receipt given by them to one George Shields for the cash pay-

ment made upon the purchase money for said property, which receipt or contract of sale was duly executed and acknowledged and filed for record on the following day, August 2nd, 1929. Shields, it seems, was only a straw man, the real purchaser being Morris Macht, a real estate broker of Baltimore City.

In July, 1929, the Utility Finance Company and Morris Klein conveyed the property in question to Bernard Klein, the son of Morris Klein. The consideration therefor, as stated by Morris and Bernard Klein, was the payment to the company by Bernard Klein of the loan made by it to Morris Klein to enable him to finance the purchase of the property in 1927, and for which Morris Klein had conveyed the property to that company. On August 2nd, 1929, Bernard Klein entered into an agreement with one Walter J. Pugh, a representative of William Martien & Co., for the sale of the property to him for the sum of $3,500. The firm of Martien & Co., brokers, was acting, in the purchase of the property, for the Union Railroad Company of Baltimore.

After the execution of the contract between Allers and wife and Shields, made by Marion Cox acting for Macht, Cox and William B. Davidson, representing Macht, called at the home of Morris Klein, carrying with them a deed to be executed by him, conveying the property in question to Allers and wife. At that time, they tendered to Morris Klein the sum of $2,550, the amount of balance owing by Allers and wife to Klein upon the purchase money therefor, and at the same time presented the said deed to him with the request that he execute it. He refused to accept the money and declined to execute the deed, saying that he had transferred the property to his son. No point was made as to the sufficiency of the tender. It was upon Klein's refusal to accept the money and convey the property to Allers and wife that the bill in this case was filed.

The bill was filed against Morris Klein, Paderewski Building Association, Inc., Morris Realty Building & Loan Association, Inc., and Bernard Klein, and by it the court was asked to pass a decree specifically enforcing the written agreement, by which Morris Klein sold the afore-

said property described in the bill, as modified by the oral agreement thereafter made, or if it should be found that a *bona fide* intervening interest or right in the property had been acquired by another without notice, making it inequitable to specifically perform the said agreement, that it decree a personal judgment against the defendants in favor of the plaintiffs.

The bill was answered by the defendants, and the case was then heard on bill, answer, and testimony taken before the chancellor, who, as disclosed by his opinion found in the record, held that the contract between Morris Klein, vendor, and Allers and wife, vendees, was enforceable by specific performance; but, as stated by him, he "in the exercise of the discretion allowed in cases of this class, and exercising that discretion in view of intervening rights" was "of the opinion that real equity in this particular case may best be done by awarding compensation alone," and in his decree he refused to specifically enforce the contract, but retained the bill, as he states, "for the purpose of awarding compensation to the plaintiffs," and then decreed that the "defendant, Morris Klein, pay to the plaintiffs, Howard Henry Allers and Elizabeth Margaret Allers, his wife, the sum of four hundred sixty-one dollars and ninety-one cents ($461.91) with interest from August 23, 1929." This amount of $461.91 decreed to be paid by Klein was composed of $161.91, the amount that was found to have been paid by Allers and wife upon the purchase money, and the balance, $300, the difference in the amount they were to pay for the property and the amount they were to receive for it in the sale of it to Macht. The chancellor regarded the sum decreed to be paid Allers and wife as the amount of damages suffered by them in Klein's failure and refusal to specifically perform his contract with them.

In the third paragraph of the original bill filed in this case, the agreement between the parties, made about two weeks after the written agreement was signed by them, was regarded as a cancellation of the original contract of sale, as shown by the allegation therein, where it is said: "Your

orators and the said Klein mutually agreed to a cancellation of said written agreement, and simultaneously therewith, orally mutually agreed with each other, that said Klein sell the said property unto your orators, who thereby agreed to purchase same, at and for the sum of $2,700.00, of which $50.00 was allowed on account of such purchase price, thereby reducing the balance and the purchase price to the sum of $2,650.00," which was to be paid "by the by-weekly payment of the sum of $16.00, out of which payment, an agreed portion thereof, was to be applied to the reduction of the balance of the purchase price and the balance of such payment (by weekly) was to be applied to the curtailment of expense accruable in connection with the maintenance of the property, and to the payment of the accruing interest on the balance of the delayed payment."

After much evidence had been taken, the court, upon the petition of the plaintiffs, granted them leave to amend this paragraph of the bill. In their petition it was alleged: "That through inadvertence, the third paragraph of said bill of complaint fails to set forth the correct and true conditions of the transaction, inasmuch as it appears therefrom, that the written contract was cancelled, and an entirely new oral contract made, in relation to the sale and purchase of said premises; whereas, in fact, the written contract was not cancelled but its indefinite terms therein contained were later modified by an oral agreement making definite its otherwise indefinite terms." The third paragraph was amended to conform to the facts and conditions of the transaction, as stated in the petition. The defendants objected to the allowance of the amendment, and their objection being overruled, they excepted to the ruling of the court thereon, and, after the amended bill was filed, they demurred thereto.

The court to which the application to amend is made must of necessity judge of the propriety of the proposed amendment. It may be said, generally, that in passing upon applications to amend, the ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice (*Miller's Equity Proc.*, sec. 182), but "a

plaintiff is not at liberty to abandon the entire case made by his bill and to make a new and different case by way of amendment." *Miller's Equity Proc.*, sec. 186; *Bannon v. Comegys*, 69 Md. 411, 16 A. 129; *Benscotter v. Green*, 60 Md. 327; *Fooks v. Williams*, 120 Md. 440, 87 A. 692.

In this case, the contention is made by the defendants that the contract alleged in the amended bill is not the contract alleged in the original bill, that they are separate and distinct contracts. This, in our opinion, was not the effect of the amended bill; it did not, we think, allege a new contract. In the original bill, the appellants not only alleged the execution of the written contract, but they also alleged that there was a subsequent oral agreement between the parties in relation to the subject-matter of the written contract. In their original bill, they treated the written contract as canceled by the subsequent oral agreement, while by the amended bill the oral agreement was regarded as a modification of the written contract and not a cancellation of it, and the amendment was made to make the allegations of the bill conform to the proper interpretation and meaning of the oral contract as to its effect upon the written contract, which was in accord with the established practice in this state.

Whether a plaintiff will be permitted to amend his bill of complaint is in the discretion of the court, and the action of the court in the exercise of that discretion must depend largely upon the special circumstances of each case, and ordinarily no appeal lies from its action thereon. *Miller's Equity Proc.*, sec. 182.

The real questions presented by this appeal, as it appears to us, are: (1) Was the contract enforceable by specific performance, and (2) were there any intervening rights acquired by any person or persons that would render it inequitable to enforce specific performance of the contract?

The evidence in this case, in our opinion, established the existence of a contract between the parties, capable of enforcement by specific performance.

By the written contract executed on the 23d day of November, 1927, and signed by all the parties, the property

was sold by Klein to the Allers for a definite sum of money, so much to be paid in cash, and the balance to be secured by first and second mortgages, and, upon the payment of the balance of the purchase money, Klein was to convey to the vendees a good and merchantable title in and to said property.

The contract was either drawn by or at the instance of Klein. The mortgages were not, at the time, presented to the vendees for execution. About two weeks thereafter, as testified to by Allers and wife, Klein came to their home and, without any reference to the execution of the mortgages, agreed with them that they should pay to him eight dollars per week, payable every two weeks; the amount so paid to be applied as follows: a part to the payment of interest on the unpaid purchase money, a part to the expense of maintenance, and the balance upon the unpaid purchase money for the property.

At the time this agreement was entered into, a card was produced by Klein upon which was written by him in ink: (1) The names of "Howard Henry and Elizabeth Margaret Allers" and their address, "1429 Hoffman Street." (2) The amount of the contract, "2650.00," which, as explained by the Allers, was the amount owing after the cash payment of $50. (3) The date, "November 23, 1927." This was not the date of the oral agreement, but the date of the written agreement; it being agreed that the date upon the card should be written as of the date of the written agreement. (4) The amount to be paid, which was first written thereon, "$9.00," but this was changed by lead pencil to $8, which change appears upon the card. (5) Distribution of the amount to be paid, to wit: "Int. $3.24," "exp., $2.25," "dues $3.51," making a total of $9. The last item, "$3.51," it seems, was likewise changed in order to make the total of the items not exceed the amount of $8. Below the writing upon the card were columns headed, "Date," "Amount," "Received by." The card then shows payments made at the end of two week periods, generally in the amount of $16.

The date of the first payment is indistinct, but the second was on the 23rd of January, 1927, and the last, January,

202

1929. Upon the card used was printed Morris Building & Loan Association, and for that reason alone, the Morris Building & Loan Association was made a party to the proceedings. As stated by Klein, it had no connection with the transaction. After the card referred to was filled, a book of the Paderewski Association was used in entering the receipts for money paid by the Allers, the last entry thereon being July 20th, 1929. There was, however, produced in evidence, upon a separate slip of paper, a receipt dated August 5th, 1929, where for the first time, in all the entries, the word "rent" appears. That is, the collector in writing the receipt for the amount then paid says "rent two weeks."

Klein admitted that he was at the home of the Allers about two weeks after the execution of the written agreement, and that at such time it was agreed between him and them that they should pay to him the said sum of sixteen dollars every two weeks, but said that this amount was to be paid to him as rent for the property; that the previous written agreement of sale was then canceled because, as stated by him, they were not able to consummate the sale and their possession thereafter was that of tenants and not as purchasers of the property.

He did not deny the production of the card to which reference has been made, nor did he explain or attempt to explain its contents, that is, why or for what reason there appeared thereon the words "amount of contract, $2,650.00," and the respective amounts to be paid for interest, expenses, and dues, all of which were inconsistent and at variance with his claim that the amounts thereafter shown by the card to have been paid by Allers and wife were paid as rent for the property. The evidence of the Allers, supported by the card mentioned, is too clear and convincing to admit of any doubt as to the purpose for which the money received from the Allers was paid by them. The oral agreement between the parties recognized the purchase price of the property, fixed and established by the written agreement, and the effect of it was only to change the manner or way by which the balance of the purchase money was to be paid. The oral agreement was a modi-

fication of the written agreement to that extent only, and was not a cancellation of it. The contract price appearing upon the card is "$2,650.00." This was the amount owing at that time, after the cash payment of $50, and as it was the amount with which they were then dealing, this amount, $2,650, was placed upon the card. It is, however, contended by the appellees that the oral agreement cannot be treated as modifying the written contract.

The ground of this contention is that, as this agreement is not in writing signed by the parties, and, as claimed by the appellees, is within the Statute of Frauds, it could not have the effect of modifying the previous written agreement. Had the subsequent agreement been in writing and signed by the parties, as was the first agreement, no questions could be successfully raised as to its effect upon the former agreement. It would have modified it. It is only because the later parol agreement is claimed by Klein to be within the Statute of Frauds that the contention is made that it could not modify the earlier written agreement. The error of this contention is in the claim that the oral or parol agreement was within the Statute of Frauds. This agreement, though not made in writing and signed by the parties, was partly performed by the numerous payments made thereunder, by the Allers, while in possession of the property, which had the effect of taking it out of the Statute of Frauds. *Atwell & Appleton v. Miller,* 11 Md. 348, 360 and 361; *Hercules Powder Co. v. Campbell,* 156 Md. 366, 144 A. 510.

The remaining question is: Would the enforcement of the contract in this case for the sale of the property by specific performance be inequitable because of the acquisition by any person or persons, without notice, of any *bona fide* intervening rights in connection therewith.

In this case, the contract of sale here attempted to be enforced by specific performance was made in November, 1927. The appellants, purchasers of the property, remained in possession, and continued to make the payments provided in the contract to Morris Klein or his agents, until August, 1929, when they sold it to Macht.

In July of that year, Morris Klein, with the Utility Finance Company, to whom he had previously transferred the property as a security for the payment of a debt, conveyed the same to Bernard Klein, his son, who, as shown by the card hereinbefore referred to, received many of the bi-weekly payments that were made by Allers and wife upon the purchase price of the property, and had full knowledge of their claim thereto under the contract. The sale of the property by Allers to Macht was made on the 1st day of August, and on the next day, the 2nd day of August, the written contract was filed for record. The alleged sale to Pugh by Bernard Klein, who had then become the holder of the legal title in the property, was consummated on the 2nd day of August, the day upon which the contract of sale to Macht was filed for record, whether before or after, it is not shown by the record. By this sale to Pugh, the Kleins were to receive $3,500 for the property, $500 more than the amount that was to be paid by Macht to the Allers, and $800 more than the amount for which he had sold the property to them. In addition thereto, Klein had received from the Allers, as payments on the purchase money, the sum of $161. It will thus be seen that Klein or his son, or both, will be the beneficiaries of their own wrong in refusing to perform the contract made with Allers and wife, if the sale to Pugh is permitted to stand. In the sale to Pugh, the negotiations were not with the Kleins, but with Straus, their agent. Pugh was acting for William Martien & Co., who in turn were acting for the Pennsylvania or the Union Railroad Company, to which Pugh was to assign the interest acquired under his contract with the Kleins.

The contract of sale made by Straus, acting for the Kleins, with Pugh, acting indirectly for the Union Railroad Company, was dated the 2nd day of August, 1929, the day on which the contract of sale made by the Allers with Macht, in which the name of Shields appears as the purchaser, was filed for record. It is not shown that, at the time the contract with Pugh was executed, the contract with Macht was not filed for record. If filed at that time, it was construc-

tive notice to Pugh of the sale to Macht. Pugh testified that, in his negotiations for the purchase of the property, he never called upon the Allers, nor is it shown from the evidence that he made any effort to ascertain whether or not Allers and wife, who had been living for years upon the property, had any interest therein greater than that of tenants. His information as to the extent of Kleins' interest in the property, as testified to by him, was acquired solely from the records.

The rights of Allers and wife, acquired under the contract made by them with Morris Klein, were fully known to Bernard at the time of the conveyance of the property to him, and it is needless to say that he was not a *bona fide* purchaser, or holder of the property without notice. As to the Union Railroad Company, the purchaser of the property under the contract made with William L. Straus, agent of the Kleins, it is not shown in the first place that it was without constructive notice of the sale made by the Allers to Macht. It was shown, as stated above, that said contract of sale to Macht was placed upon record on August 2nd, 1929, the day that the contract of sale with Pugh was executed, but it is not shown that, at the time of the execution of the last-mentioned contract, the contract of sale to Macht was not of record. It is also shown that Pugh did not deal with the Kleins, who knew all the facts in relation to the sale to the Allers, but dealt with Straus, their agent. There was a race, it seems, between the brokers as to who should become the purchaser of the property. The Allers were at the time in possession of and occupying the property under their contract with the Kleins, and openly asserting their claim thereto. Pugh says he did not know of their claim, and never inquired as to the existence of any such claim, but was content to rely solely upon the record title of Bernard Klein, who knew all about the claim with the Allers, and of whom Pugh made no inquiry. If Pugh did not have actual or constructive notice of the claim of the Allers to the property, he was, we think, in possession of information that should have put him upon inquiry as to such claim. *Hardy*

*v. Summers,* 10 G. & J. 324; *Baynard v. Norris,* 5 Gill, 468; *Shipley v. Fink,* 102 Md. 228, 62 A. 360; *Liggett Co. v. Rose,* 152 Md. 167, 136 A. 651; 16 *R. C. L.* 539.

Upon the facts disclosed by the record, the railroad company, we think, should not have been regarded or treated as a *bona fide* purchaser of the property, against whom it would be inequitable to decree a specific performance of the contract made by Morris Klein with Allers and wife, dated November 23rd, 1927; and in our opinion the court erred in not decreeing specific performance of the contract between Klein and Allers and wife, and we will therefore reverse the decree appealed from.

As shown by the opinion found in the record, the court held that Shields had no standing as a party plaintiff, and by its decree the bill was dismissed as to all the defendants except Morris Klein.

In this case, there were two appeals, in one record, from the decree of the court; one of these appeals was taken by Allers and wife, No. 39, and the other by Macht and Shields, No. 40.

In No. 39 the decree will be reversed and case remanded. As No. 40 presents the same questions as those presented in No. 39, no entry of any conclusion will be made therein, except that the costs thereof be paid by the appellee.

> *Decree in Nos. 39 and 40 reversed, and case remanded for further proceedings in conformity with this opinion, and costs in both cases to be paid by the appellee.*