BLONDELL ET AL. *v.* TUROVER

[No. 118, October Term, 1949.]

252

Decided *April 19, 1950.*

*Rehearing denied May 17, 1950.*

254

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

Submitted on brief by *Joseph J. Blondell* and *Gordon Louk* in proper person.

*Nicholas Orem, Jr.*, with whom were *T. Howard Duckett* and *Duckett, Gill & Anderson* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is a suit for specific performance brought by Isadore S. Turover, of Washington, against Joseph J. Blondell and Gordon Louk, holders of title to a tract of 3½ acres of unimproved land near Kenilworth Avenue in Prince George's County. Defendants, who are salesmen for Dunn & Company, a real estate firm, of Mount Rainier, are appealing here from a decree annulling their deed for the land and ordering them to convey it to complainant.

The property was conveyed to defendants by Victoria I. Leapley and Charles E. Leapley, her husband, in June, 1946. In March, 1946, Louk called to see Mrs. Leapley with the object of acquiring a portion of her land. A freight line of the Baltimore & Ohio Railroad runs across her land, and she and her husband reside on the remaining portion of the land on the opposite side of the railroad track. On March 27 Mrs. Leapley signed a sale listing

card giving Dunn & Company the exclusive right to sell the tract at not less than $1,500 per acre, less commission of 10 per cent. Louk obtained this listing in order to sell the tract to Blondell and a client, but the client did not enter the deal on account of difficulty in financing it. It was claimed that Blondell signed the contract to buy the property on March 27, but his check for $100 in part payment was dated April 5 and was not deposited until April 23. In any event, when the contract was submitted to Mrs. Leapley, she refused to sign it. On April 25 Leo W. Dunn, of Dunn & Company, wrote her a letter warning her that, while she could refuse to sell, she would be liable for the amount of the commission. He demanded $450 in case she refused to sell. As the result of this letter and further inducements, Mrs. Leapley and her husband executed the contract of sale on May 20. Inasmuch as the client did not enter the transaction, Blondell agreed to let Louk participate in it. On June 13 the Leapleys executed the deed conveying the tract to Blondell and Louk for $5,304 less commission.

In the meantime Edward N. Lightbown, a real estate broker, of Brentwood, visited Mrs. Leaply and her husband with the object of acquiring the tract for complainant. On April 4 they signed a contract giving complainant an option to buy the tract at $1,500 per acre, with the proviso that if satisfactory arrangements could not be made for an outlet to Tuxedo Road or Frohlich Lane, or if the property could not be zoned for industrial use, then complainant was not obligated to buy it. The Leapleys signed three copies of the contract, one of which was left with them. Lightbown took the other two copies to complainant. On April 12 complainant signed the two copies. He kept one, and Lightbown returned the other on the same day to the Leapleys, getting back the one he had left with them. Complainant arranged for an outlet by getting an option to buy adjoining land abutting on Tuxedo Road, and also made application to have the tract rezoned from residential to industrial. On June 25 it was rezoned industrial. Complainant gave Lightbown

a check for $500 to be delivered to the Leapleys in part payment of the purchase price. Shortly afterwards Louk informed Lightbown that the Leapleys had sold their property. Lightbown accordingly returned the check to complainant, but complainant learned that the Leapleys had conveyed the tract to defendants. Complainant's option did not expire until July 19. On July 17 he notified the Leapleys that he elected to exercise the option.

The law is plain that specific performance of a contract for the purchase of real estate based upon an option is invoked, not on the theory that the option itself is enforceable, but on the theory that the option is a continuing offer to sell and, when duly exercised by the optionee, becomes an enforceable contract. When an optionee signifies his intention to exercise the option, and tenders the amount of the purchase price, if required, he is entitled to specific performance of the contract. *Brewer v. Sowers,* 118 Md. 681, 688, 86 A. 228; *Trotter v. Lewis,* 185 Md. 528, 534, 45 A. 2d 329. Nevertheless, an option is not a mere offer to sell, which can be withdrawn by the optionor at any time before acceptance, but a binding agreement if supported by consideration.

In *Thistle Mills Co. v. Bone,* 92 Md. 47, 48 A. 37, this Court said that when an owner of land gives to one person an option to buy it, and the option is exercised within the time limited, another person to whom the owner subsequently agrees to sell it is not entitled to enforce his contract, although the contract was made before the first person declared his purpose to exercise the option. In the instant case complainant gave the Leapleys due notice that he elected to exercise the option. The contract obtained by Blondell and Louk was not executed by the Leapleys until May 20, and therefore it was subordinate to the contract which the Leapleys entered into with complainant in April. It is a recognized principle that a real estate broker has no implied authority to execute a contract for the sale of land that will be binding upon the owner. *Karupkat v. Zoph,* 140 Md. 242, 117 A. 761. Hence, the mere listing of property with a real estate

broker does not give a prospective purchaser any legal or equitable interest in the property. It is also well settled that the purchaser of land under a contract of sale or option contract may specifically enforce the contract against any person to whom the vendor subsequently sold and conveyed the land, if such person had notice of the prior contract. *Engler v. Garrett*, 100 Md. 387, 398, 59 A. 648; *Allers v. Klein*, 161 Md. 194, 155 A. 420.

The law requires reasonable diligence in a purchaser of real property to ascertain any defect of title. When such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. When a purchaser has notice of a fact which casts doubt upon the validity of his title, the rights of innocent persons must not be prejudiced as a result of his negligence. *Brush v. Ware*, 15 Pet. 93, 112, 10 L. Ed. 672, 680. A purchaser of land who is not a *bona fide* purchaser without notice takes the land subject to any prior equity and holds it as a constructive trustee in favor of a third person claiming under a prior contract of sale. *Smoot v. Rea*, 19 Md. 398, 412. In determining whether a purchaser had notice of any prior equities or unrecorded interests, so as to preclude him from being entitled to protection as a *bona fide* purchaser, the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. *Baynard v. Norris*, 5 Gill 468, 483, 46 Am. Dec. 647; *Higgins v. Lodge*, 68 Md. 229, 235, 11 A. 846, 6 Am. St. Rep. 437. In other words, a purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect. Thus, in *Engler v. Garrett*, 100 Md. 387, 398, 59 A. 648, 650, the defendant was held to have taken the property with notice of a prior contract of sale

notwithstanding that he had been told "that the deal with the plaintiff had fallen through," because it was the defendant's duty to make the necessary investigation to discover the true situation.

We are convinced that Blondell and Louk had sufficient notice of the prior sale to complainant to justify the chancellor in impressing a constructive trust upon the property and awarding specific performance as prayed by complainant. Louk admitted in his deposition that Lightbown informed him within a few days after April 4 that Mrs. Leapley had signed a contract to sell the property to his client, and he suggested that he would be willing to divide the commission with Dunn & Company if they would relinquish any interest they might have in the property. Louk replied that he was not interested in abandoning his interest for a part of the commission.

If Louk had notice of the sale to complainant, and we think he had, it follows that Blondell is likewise chargeable with notice. Louk admitted in his deposition that he told Blondell that Lightbown had found a purchaser for the property. Blondell admitted that Louk had informed him that Mrs. Leapley had signed "some sort of an agreement to sell the property." In view of the fact that Blondell and Louk were working together to acquire the property and shared in the commission, each getting one-fourth, the remaining one-half going to the firm, we think that Blondell as well as Louk had sufficient information to put them on notice of the prior contract of sale.

*Decree affirmed, with costs.*